Rockingham
No. 2004-422

DEREK O'DONNELL & a.

v.

HCA HEALTH SERVICES OF NEW HAMPSHIRE, INC.
d/b/a PARKLAND MEDICAL CENTER & a.

Argued: June 15, 2005
Opinion Issued: September 8, 2005

*Maggiotto & Belobrow, PLLC*, of Concord (*Paul A. Maggiotto* on the brief), and *Troubh Heisler* of Portland, Maine (*John P. Flynn* on the brief and orally), for the plaintiffs.

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Marc R. Scheer* and *Todd Hathaway* on the brief, and *Mr. Scheer* orally), for the defendants.

NADEAU, J. This appeal follows a jury trial awarding the plaintiffs, Derek and Melissa O'Donnell, individually and as parents and next friend of Ashley O'Donnell, a minor, damages for medical malpractice, negligence, and negligent infliction of emotional distress, stemming from labor and the delivery of Ashley in January 1999. We affirm in part, reverse in part, vacate in part, and remand.

On appeal, the defendants, HCA Health Services of New Hampshire, Inc. d/b/a Parkland Medical Center, Parkland Physician Services, Inc., Dr. Monelle Bisson, and Dr. Patricia Chaudhuri, argue that the Trial Court (*McHugh*, J.) erred by: (1) failing to set aside the plaintiffs' verdicts for bystander emotional distress damages; (2) allowing plaintiffs' expert to provide unreliable causation testimony; (3) failing to set aside the verdicts for failure of the jury to find comparative fault on the part of Melissa O'Donnell; (4) referring to potential liability insurance in its jury instructions; (5) failing to non-suit portions of the plaintiffs' case after the opening statement; and (6) failing to grant a mistrial after the plaintiffs' expert referred to Melissa O'Donnell's cesarean section when she later had another child.

The jury could have found the following relevant facts: Ashley O'Donnell, the plaintiffs' second child, was born in January 1999. Complications arose during the delivery as a result of which Ashley suffered a severed brachial plexus nerve injury. Both plaintiffs witnessed the birth, including the obstetrical emergency resulting in the nerve injury.

The delivery of plaintiffs' first child was performed by Patricia Miller, M.D., in 1991. During that delivery, complications arose as a result of shoulder dystocia, a complication in which the baby's shoulder contacts the pubic bone, preventing delivery. Shoulder dystocia is a serious obstetrical condition that could result in profound injury or death if the baby is not delivered quickly. In the post-delivery medical records, Dr. Miller noted the presence of severe shoulder dystocia, and recommended against future vaginal deliveries by Melissa O'Donnell.

For her second pregnancy in 1997, which ended in miscarriage, Melissa established obstetric care with the defendant, Parkland Physician Services, Inc. At that time, she advised her treating physician at Parkland of general complications during her first pregnancy and signed a medical release authorization allowing them to obtain the medical records of her prior delivery. However, Parkland Physician Services never obtained the records. Nor, during Melissa's third pregnancy, did they seek to obtain the records even though Melissa suffered from early-stage preeclampsia and pre-natal tests indicated that Ashley would be larger than the plaintiffs' first child.

On January 13, 1999, Melissa was admitted to the Parkland Medical Center for a planned induction of labor and delivery. During delivery, shoulder dystocia again arose as a complication. As the labor progressed, Melissa requested a cesarean section delivery due to the difficulties she was experiencing. Melissa's mother, Jane Sawyer, also present in the delivery room, spoke with the delivery doctor and expressed concern for the extensive clotting her daughter was experiencing, and advised the doctor of Melissa's previous difficulties. The doctor attempted several maneuvers to deliver Ashley, none of which were successful. After these attempts failed, the doctor performed a fourth degree episiotomy and delivered Ashley. The episiotomy required protracted reparative surgery for Melissa. Later pediatric records and neurological testing revealed Ashley suffered a near avulsion, or complete tear, of her brachial plexus, a bundle of nerves running from the lower cervical spine into the shoulder and down the arm.

During the jury trial, the plaintiffs' expert, Joseph Finkelstein, M.D., who is board-certified in obstetrics and gynecology and who specializes in high-risk obstetrics, infertility and laparoscopic surgery, testified that the

defendants were negligent and that their negligence was the proximate cause of Ashley's injury. Derek and Melissa O'Donnell also testified as to the events surrounding the delivery as well as to the severe emotional shock they have endured as a result of Ashley's injuries. They testified that their emotional distress has caused sleeping problems and heightened stress in their relationship.

In a special verdict form, the jury found that the defendant's failure to obtain the prior delivery records constituted negligence and found that Melissa O'Donnell was not negligent to any degree. The jury awarded two million dollars for damages suffered by Ashley. The jurors found that Melissa O'Donnell suffered extreme emotional distress as a result of the defendants' negligence and awarded her two hundred thousand dollars for all of her claimed damages including lost wages. The jury also found that Derek O'Donnell suffered extreme emotional distress and awarded him one hundred thousand dollars. This appeal followed.

On appeal, the defendants first argue that the damages awarded to Melissa and Derek O'Donnell for their emotional distress as bystanders should have been set aside. Among other things, they argue that there was no evidence at trial, expert or otherwise, that the O'Donnells suffered delivery-related physical manifestations of emotional distress. We agree.

■ Establishing the boundaries of liability for negligent infliction of emotional distress to bystanders has proven to be a vexing issue for courts. Since 1979, we have relied upon the traditional tort concepts of foreseeability and causation when confronted with this issue. *Corso v. Merrill*, 119 N.H. 647, 651, 656 (1979). Under *Corso*, a claim for negligent infliction of emotional distress to bystanders must satisfy three prongs: (1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms. *Id.* at 659. At issue here is the third prong of *Corso*.

■ To recover for emotional distress under a traditional negligence theory, we have consistently required plaintiffs to demonstrate physical symptoms of their distress regardless of physical impact. *Palmer v. Nan King Restaurant*, 147 N.H. 681, 683-84 (2002); *Thorpe v. State*, 133 N.H. 299, 304 (1990). Because pain experienced upon the death, illness or injury of a loved one is an emotional cost borne by everyone living in society, "[t]he law intervenes only when the plaintiff bears an unusual or aggravated burden." *Nutter v. Frisbie Mem. Hosp.*, 124 N.H. 791, 796 (1984) (quotation omitted). Consequently, we have held that the emotional harm must be a significant, painful mental experience with lasting effects. *Palmer*, 147 N.H. at 684. To ensure that the emotional injury is sufficiently serious to be afforded legal protection as well as to establish causation, we

have repeatedly held that "expert testimony is required to prove physical symptoms suffered from alleged negligent infliction of emotional distress." *Silva v. Warden, N.H. State Prison*, 150 N.H. 372, 374 (2003).

At trial, the plaintiffs did not provide an expert witness to testify regarding their physical manifestations of their distress or their cause. The defendants moved for a directed verdict on this issue and later moved to set aside the verdicts after trial. These motions were denied when the trial court ruled that "no expert is required in order for the plaintiffs to make their emotional distress claims." Though the plaintiffs claim great suffering, we have held that expert testimony is required to recover damages for negligent infliction of emotional distress. Accordingly, the trial court erred when it ruled otherwise.

The plaintiffs maintain that the defendants failed to preserve this issue at trial. We disagree. At the close of the plaintiffs' evidence, the defendants moved for a directed verdict as to the claims of negligent infliction of emotional distress. The trial court reserved argument until after the verdict, at which time the defendants filed a motion to set aside the verdicts for Derek and Melissa O'Donnell. The defendants' motion clearly objected to the lack of expert testimony establishing the physical manifestations of the distress. Further, the trial court specifically rejected the plaintiffs' contention that the issue was not preserved at trial.

The plaintiffs point to three recent cases in which we allowed recovery for emotional damages without requiring expert testimony. *See In the Matter of Gronvaldt & Gronvaldt*, 150 N.H. 551, 554 (2004) (wife not required to offer expert testimony of emotional distress resulting from physical and mental abuse); *Silva*, 150 N.H. at 374-75 (prisoner not required to offer expert testimony of emotional distress after alleged assault during a strip search); *Fischer v. Hooper*, 143 N.H. 585, 592-93 (1999) (plaintiff not required to offer expert testimony to prove emotional distress from invasion of privacy caused by improper wiretapping of conversations). These cases are distinguishable. They arose from direct physical injury and/or intentional torts where "it is within the ken of average lay people what mental and emotional harm might result." *Silva*, 150 N.H. at 375. We decline the invitation to expand this exception to the negligent infliction of emotional distress to bystanders under the facts of this case.

Melissa O'Donnell's suit also included a claim for lost wages. That claim is not disturbed by our ruling barring her claim for negligent infliction of emotional distress. Accordingly, we reverse the jury's award of damages to Derek O'Donnell, and vacate the award of damages to Melissa O'Donnell.

We remand for a new trial on the issue of damages due Melissa O'Donnell not related to the emotional distress claim.

█ We construe the defendants' next argument to be that the trial court erred in allowing the plaintiffs' expert, obstetrician-gynecologist Joseph Finkelstein, M.D., to testify as to the cause of Ashley's nerve injury. Specifically, they argue that the reasoning or methodology employed by Dr. Finkelstein was not sufficiently reliable and should have been excluded. The defendants argue that because Dr. Finkelstein is not a specialist in nerve injuries, "he would not know how to quantify the forces exerted on the brachial plexus during delivery." New Hampshire Rule of Evidence 702 states that an expert may be qualified on the basis of "knowledge, skill, experience, training or education." N.H. R. Ev. 702. We will not reverse a trial court's determination of expert qualification unless we find it to be an unsustainable exercise of discretion. *Baker Valley Lumber v. Ingersoll-Rand*, 148 N.H. 609, 612 (2002).

█ The record establishes that Dr. Finkelstein is board-certified in obstetrics and gynecology and specializes in high-risk obstetrics, infertility and laparoscopic surgery. In addition, he has been a clinical instructor in obstetrics at the New York Hospital Cornell Medical Center, and maintained a private practice in high-risk obstetrics since 1978. An individual witness's qualifications must be determined on a case-by-case basis, not by application of a *per se* rule of exclusion or inclusion. *Mankoski v. Briley*, 137 N.H. 308, 313 (1993). In *Briley* we held that the lack of specialization in a particular medical field does not automatically disqualify a doctor from testifying as an expert in that field. *Id.*

█ Dr. Finklestein testified that his expert opinion regarding the cause of Ashley's injury was derived from his personal experience, attendance at numerous obstetric seminars, and review of journals and treatises over the course of the last twenty-five years. Furthermore, the reasoning or methodology employed by Dr. Finkelstein was subject to cross-examination at trial and went to the weight and credibility of Dr. Finkelstein's testimony. *Cf. Baker Valley Lumber*, 148 N.H. at 613. Accordingly, we find the trial judge's decision to allow Dr. Finkelstein to testify as to the cause of Ashley's injury was a sustainable exercise of discretion.

Next, the defendants argue that the trial court erred in failing to set aside the verdict for the failure of the jury to find any comparative fault on the part of Melissa O'Donnell. The defendants argue that Melissa O'Donnell failed to advise them of the complications with her first delivery. We will uphold the trial court's decision on a motion to set aside the verdict

unless the decision was made without evidence or the court committed an unsustainable exercise of discretion. *Mullin v. Joy*, 145 N.H. 96, 96-97 (2000). "We will set aside a jury verdict if it is conclusively against the weight of the evidence or if it is the result of mistake, partiality, or corruption." *Quinn Bros. v. Whitehouse*, 144 N.H. 186, 190 (1999) (quotations omitted). A verdict is conclusively against the weight of the evidence only if no reasonable jury could have reached it. *Mullin*, 145 N.H. at 96, 97.

■ There was evidence that Melissa signed a medical release form authorizing the defendants to obtain her medical records. The defendants failed to obtain the records, which reported the complications that took place during her first pregnancy. In light of this evidence, a reasonable jury could have found no comparative fault on the part of Melissa O'Donnell. We conclude that the trial court properly denied the defendants' motion to set aside the verdict.

The defendants next argue that the trial court erred by referring to potential liability insurance in its jury instructions. The trial court gave the jury the following instruction:

> In determining damages, ladies and gentlemen, you may not consider or speculate whether the defendant is—or any of these defendants are insured or have the ability to pay any awards. Your responsibility is to determine damages in accordance with the law without regard to the defendants' financial circumstances. Likewise, you may not consider or speculate whether the plaintiff has received benefits from other sources in connection with the injuries claimed. This includes, for example, health insurance coverage or any other type of insurance benefits. The law does not permit you to make any deduction from the plaintiffs' damages to reflect benefits which may have been received from other sources. This is so because the plaintiffs may be required to repay such other sources from any award made in this case. Your duty to determine damages is based only upon the evidence presented at trial and the legal instructions which I have just given to you.

■ The purpose of jury instructions is to identify issues of material fact, and to inform the jury of the appropriate standards of law by which it is to resolve them. *Transmedia Restaurant Co. v. Devereaux*, 149 N.H. 454, 457 (2003). We review jury instructions in context and will not reverse the trial court unless the charge, taken in its entirety, fails adequately to

explain the law applicable to the case in such a way that the jury is misled. *Id.*

In determining whether an erroneous jury instruction requires reversal we apply a two-part test. *See Francoeur v. Piper*, 146 N.H. 525, 531 (2001). "First the [defendants] must show that it was a substantial error such that it could have misled the jury regarding the applicable law.... [If there is substantial error, the court] will reverse the jury verdict unless the [plaintiffs] show that the error did not affect the outcome below." *Id.* at 531-32.

■■■ We fail to see how the jury could have been misled by the instructions. The instructions explained what the jury could and could not consider when determining damages, and referred to insurance only in that context. After reviewing the trial court's jury instructions in their entirety, we conclude that there was no error.

Next, the defendants argue that portions of the plaintiffs' case should have been nonsuited because plaintiffs' counsel did not articulate in his opening statement that the failure to obtain prior medical records constituted negligence. The defendants argue that as a result of that omission, the plaintiffs failed to describe evidence sufficient to meet their burden of proof. We disagree.

■■■ On appeal, we review the grant of a motion for nonsuit after an opening statement to determine whether upon that evidence there is a case for submission. *Cusson v. Beauregard*, 143 N.H. 410, 411 (1999). In passing upon defendant's motion for nonsuit, the Court must consider the evidence as true and consider all the evidence most favorably to the plaintiff. *Id.*

After reviewing the plaintiffs' opening statement, we reject the defendants' argument that it failed to identify evidence necessary to sustain their claims against defendants Bisson and Parkland Physician Services. We agree with the trial judge's finding that the opening statement did adequately familiarize the jury with the nature of the claims being presented. Specifically, the plaintiffs discussed the issue of negligence, various elements of Bisson's and Parkland Physician Services' negligence, and their burden of proof. From the record, it is clear that the plaintiffs' opening statement adequately identified for the jury the plaintiffs' claim against Bisson and Parkland Physician Services and that the jury understood those claims. Accordingly, we reject the defendants' argument that the trial court erred in denying their motion for nonsuit.

Finally, the defendants argue that the trial court should have granted a mistrial after the plaintiffs' expert referred to Melissa's cesarean section when she had her third child. The defendants argue that they were unduly

prejudiced because the jury might improperly have compared the two deliveries. We disagree.

We will not overturn a trial court's decision on a motion for mistrial absent an unsustainable exercise of discretion. *Murray v. Developmental Servs. of Sullivan County*, 149 N.H. 264, 268 (2003). A motion for mistrial should be granted only if the trial court determines that justice may not be done if the trial continues to verdict. *Id.* To show an unsustainable exercise of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case. *State v. Lambert*, 147 N.H. 295, 296 (2001).

During the trial, the plaintiffs' expert, Dr. Finkelstein, was directed to the records of the birth of Melissa O'Donnell's first child in 1991 and asked what the standard of care called for after a prior incidence of shoulder dystocia. Dr. Finkelstein gave a long answer that concluded,

> [one should have] explained everything to the patient so that they have the right choice to do a cesarean section, which in fact would be the choice by many physicians and recommendations by many physicians to do, as was in fact the choice in a subsequent pregnancy when she had her third child.

This reference was not elicited by counsel's question. Nor was it a major theme of the doctor's testimony.

The defendants had previously moved *in limine* to exclude all references to Melissa's subsequent delivery by cesarean section. The court had taken the matter under advisement based upon the belief that the defendants might argue that brachial plexus injuries occur in cesarean section deliveries as well. Following Dr. Finkelstein's remark, the defense requested a mistrial and that motion was denied. To justify a mistrial, remarks must be more than merely inadmissible or inappropriate; they must constitute an irreparable injustice that cannot be cured by jury instructions. *Murray*, 149 N.H. at 268. The trial court offered to give a limiting instruction, but that offer was declined by defense counsel. We conclude that any prejudice that might have resulted from Dr. Finkelstein's unsolicited remark could have been cured by a jury instruction. Accordingly, the trial court acted within its discretion by denying the motion for mistrial.

> *Affirmed in part; reversed in part; vacated in part; and remanded for a new trial on damages for Melissa O'Donnell.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.