(180 P.3d 610)
No. 98,236

DANIEL WARE, III, a minor, by and through his parents and guardians, DANIEL and JENNI WARE, *Appellants,* v. ANW SPECIAL EDUCATIONAL COOPERATIVE NO. 603, *Appellee.*

Opinion filed April 11, 2008.

*Kala Spigarelli* and *Angela Trimble,* of The Spigarelli Law Firm, of Pittsburg, for appellants.

*Teresa L. Watson, David R. Cooper,* and *Terelle A. Mock,* of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellee.

Before GREEN, P.J., GREENE and LEBEN, JJ.

GREEN, J.: Daniel Ware, Jr., and Jenni Ware, parents of Daniel Ware, III, a minor, appeal from a summary judgment granted in favor of ANW Special Educational Cooperative No. 603 (ANW) in Daniel Ware, III's negligent infliction of emotional distress claim.

When Daniel was 4 years old, he fell asleep on the bus on his way to school. The bus was operated for the purpose of transporting students to and from ANW's preschool. Daniel was inadvertently left on the bus by the driver. He woke up and began walking to his mother's place of employment. A relative saw him, picked him up, and returned him to his mother. Five months later, Daniel became ill when told he would have to start riding the bus again. He was later diagnosed with posttraumatic stress disorder (PTSD) approximately 9 months after the bus incident.

Daniel's parents brought suit against ANW alleging negligent infliction of emotional distress based on the incident in which Daniel was left sleeping on a school bus operated by ANW. ANW moved for summary judgment, arguing that Daniel did not suffer a compensable physical injury under Kansas law. The trial court, following well-established precedent, granted summary judgment for ANW on the basis that Daniel had suffered no immediate physical injury following the bus incident. On appeal, Daniel's parents contend that the manifestation of Daniel's PTSD meets the physical injury requirement in personal injury cases. In the alternative, Daniel's parents assert that the physical injury requirement of PTSD should be expanded to cover an injury suffered as a result of negligence. We disagree on both counts. Accordingly, we affirm.

On October 8, 2002, Daniel, then 4 years old, fell asleep while riding the bus to school. The bus transports students to and from ANW's school. At approximately 1 p.m., Daniel was left sleeping on the bus in the school district bus lot. Daniel awoke, left the bus, and began walking toward the downtown pharmacy where his mother was working. By chance, Daniel was seen by a relative while crossing a McDonald's parking lot. The relative returned Daniel to his mother at approximately 1:10 p.m.

Daniel's parents attempted to return Daniel to school that day, but Daniel became upset and began crying, saying he did not want to stay at school. They returned home with him. Daniel calmed down after he got home, approximately 1 to 2 hours following the incident.

Between the October 2002 bus incident and March 2003, Daniel expressed apprehensions about going to school. He told his mother

either he needed a day off, he was sick, or he would rather help his father at work. Nevertheless, Daniel did not cry, tremble, or beg his mother not to take him to school. When ANW suggested that Daniel get on the bus and ride it again, Daniel stated that he would ride the bus if Neka Hall, his grandmother's foster daughter, rode with him and if his grandmother followed in her own car. Daniel rode the bus with Neka on more than one occasion without incident approximately 2 weeks following the initial incident. Yet, on one occasion Daniel began to cry when he realized his grandmother was not behind the bus. Daniel's mother rode the bus with him on another occasion when Neka could not; Daniel cried the whole way to school, held his mother's hand, and trembled.

Sometime in March 2003, Daniel became upset and vomited at school when he was told that he would be going on a bus field trip the next day. Daniel begged his mother not to let him go; he cried; he vomited on the floor.

In June 2003, Dr. Doug Wright, Daniel's initial treating therapist, diagnosed Daniel with PTSD. Wright based this conclusion on various symptoms: namely, vomiting, anxiety, nervousness, physically shaking, acting out, hypervigilance, sleep difficulties, bedwetting, a significant increase in weight, and a refusal to attend school. Wright stated that PTSD cannot be diagnosed for at least 1 month after an incident. He stated that the nature of the disorder was a physical reenactment of feelings associated with the initial trauma. Wright agreed that Daniel's vomiting was a physical manifestation of anxiety. He further believed that the anxiety was triggered or caused by events contemporaneous to the vomiting rather than the October 2002 incident. The trial court acknowledged that Daniel controverted this fact by pointing out that Wright also testified that while triggers were contemporaneous, the anxiety or stress was from the bus incident.

Daniel's second treating psychologist, Dr. Shawna Wright, agreed that Daniel did not sustain a physical injury and that the vomiting and other symptoms were physical manifestations of emotional distress and anxiety. She agreed with the diagnosis of PTSD as a result of the bus incident. She further acknowledged that Daniel had vomited as a result of the bus incident.

Daniel's expert, Dr. James Hunter, also diagnosed Daniel with PTSD and believed that there was nothing else to attribute the onset of Daniel's problems other than the bus incident. Hunter testified that Daniel did not sustain a physical injury when he was left on the bus.

In granting ANW's motion for summary judgment, the trial court held that under *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 662 P.2d 1214 (1983), Daniel's symptoms were not compensable physical injuries for purposes of a negligent infliction of emotional distress claim.

*Did the Trial Court Err in Granting Summary Judgment to ANW by Deeming the Symptoms of PTSD Not a Physical Injury in a Negligent Infliction of Emotional Distress Claim?*

The trial court granted summary judgment to ANW, concluding that under the undisputed facts Daniel has no compensable physical injury under Kansas law.

" ' " 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' " ' [Citations omitted.]" *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007).

Indeed, summary judgment is appropriate in this case because the parties dispute no material facts. The only statements controverted by Daniel involve those made by his doctors that reach the key questions of law at issue. Daniel does not controvert the factual basis for these statements, but instead sets forth additional statements to clarify and lend support to his position. The trial court correctly acknowledged these statements in reaching its decision. Thus, the only issue before this court is whether the trial court

correctly found that Daniel has no legal basis for a negligent infliction of emotional distress claim under Kansas law.

To succeed on a claim for negligent infliction of emotional distress, a plaintiff must first establish that he or she has a qualifying physical injury under Kansas law. *Anderson v. Scheffler*, 242 Kan. 857, 860, 752 P.2d 667 (1988); see also *Grube v. Union Pacific R.R. Co.*, 256 Kan. 519, 522, 886 P.2d 845 (1994) (plaintiff must demonstrate a physical injury or a physical impact, which causes an actual injury, in order to recover for negligent infliction of emotional distress). Second, *Hoard* establishes that the qualifying physical injury must (1) directly result from the emotional distress allegedly caused by the defendant's negligence and (2) appear within a short span of time after the emotional disturbance. 233 Kan. at 279. Hence, Daniel must satisfy each of the requirements previously cited to succeed on his claim.

We will first determine whether Daniel's alleged symptoms qualify as physical injuries. Kansas courts have addressed various types of symptoms when determining whether they may be characterized as physical injuries for purposes of negligent infliction of emotional distress claims. See *Anderson*, 242 Kan. at 860 (holding shock, emotional pain, feelings of guilt, nightmares, and depression due to witnessing accident are not compensable physical injuries when there is no actual physical injury); *Hopkins v. State*, 237 Kan. 601, 612-13, 702 P.2d 311 (1985) (holding weight gain is not a compensable physical injury); *Reynolds v. Highland Manor, Inc.*, 24 Kan. App. 2d 859, 861-62, 954 P.2d 11 (1998) (holding that plaintiff failed to meet physical injury requirement when she suffered headaches, diarrhea, nausea, crying, shaking, sexual problems, and feelings of stress, all caused by anxiety); *Dill v. Barnett Funeral Home, Inc.*, No. 90,653, unpublished opinion filed February 13, 2004, *rev. denied* 278 Kan. 844 (2004), slip op. at 7-8 (holding that lack of sleep, recurring dreams, and general fatigue not a compensable physical injury).

In the present case, the symptoms experienced by Daniel included nightmares, vomiting, anxiety, nervousness, physically shaking, acting-out, hypervigilance, sleep difficulties, bedwetting, a significant increase in weight, and a refusal to attend school. Based

on court precedents previously cited, Daniel's nightmares, anxiety, nervousness, trembling, weight gain, and sleep difficulties do not qualify as physical injuries.

The key symptom emphasized by the parties began in March 2003 when Daniel vomited after having been told he would be going on a bus field trip. Daniel relies heavily on *Ely v. Hitchcock*, 30 Kan. App. 2d 1276, 58 P.3d 116 (2002), which addresses vomiting, in arguing that vomiting is a physical injury. Although the plaintiff in *Ely* vomited at the scene of the disturbing incident, he was nevertheless denied relief. 30 Kan. App. 2d at 1289-90. The court stated: "Although vomiting may be the physical impact that a case requires, Ely did not seek counseling or any sort of help for his alleged trauma. As a result, Ely has not demonstrated a significant physical injury." 30 Kan. App. 2d at 1290.

In contrast, Daniel did receive counseling from Jeff Ready in November 2002 because of the initial incident and later symptoms. Nevertheless, this counseling was related to the other noncompensable symptoms Daniel was experiencing. Daniel did not begin to see Dr. Wright until June 2003, 3 months after the first vomiting incident. Furthermore, this first instance of vomiting occurred 5 months after the initial incident, far from the almost contemporaneous vomiting in *Ely*. Indeed, this factor is relevant. See *Hoard*, 233 Kan. at 275-76 (citing *Clemm v. Atchison, T. & S. F. Rly. Co.*, 126 Kan. 181, 268 Pac. 103 [1928]; *Whitsel v. Watts*, 98 Kan. 508, 159 Pac. 401 [1916]). ANW correctly points to *Gilliam v. USD # 244 School Dist.*, 397 F. Supp. 2d 1282, 1291-92 (D. Kan. 2005), where the court rejected that vomiting is a compensable physical injury under *Ely* when the vomiting fails to occur contemporaneously or shortly after the initial incident.

Daniel urges the court to consider two federal district court cases, *Freeman v. Kansas State Network, Inc.*, 719 F. Supp. 995 (D. Kan. 1989), and *Payne v. General Motors Corp.*, 731 F. Supp. 1465 (D. Kan. 1990), *aff'd* 943 F.2d 57 (10th Cir. 1991). The trial court took note of these cases, but ruled that our Supreme Court decision in *Hoard* was controlling and took precedence over the federal court decisions. Indeed, "[f]ederal court decisions on issues of state law are not binding on and have limited precedential effect

in state courts. [Citation omitted.]" *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 669, 941 P.2d 1321 (1997).

In *Freeman*, the court held that the plaintiff's inability to lactate, which prevented her from nursing her child, qualified as a physical injury, thus defeating the defendant's motion for summary judgment. 719 F. Supp. at 1000-01 (citing *Hoard*, 233 Kan. at 274, 277-79). There, the claimed injury did not occur until 6-7 weeks after the initial incident, although the parties agreed for purposes of the motion that the defendant caused the injury. The plaintiff presented expert evidence that cessation of lactation may occur weeks after a stress inducing event, thus leading the court to conclude that a period of 6 weeks is not unusual in that situation. 719 F. Supp. at 1001. The facts of *Freeman* are similar to the present case in that witness testimony established causation and the vomiting incident did not occur until some time after the incident. Nevertheless, Dr. Doug Wright established only that *PTSD cannot be diagnosed* for at least 1 month after an incident. This does not establish that a particular symptom, such as vomiting, tends to occur at a later time with PTSD. Dr. Shawna Wright also acknowledged that Daniel had vomited as a result of the bus incident. Nevertheless, absent clear testimony that PTSD can cause vomiting to occur as much as 5 months after an incident, *Freeman* lends little support to Daniel's claim.

In *Payne*, the court held that an employee alleging employment discrimination had a compensable physical injury claim for purposes of negligent infliction of emotion distress when he experienced depression, fatigue, exhaustion, and nervousness. 731 F. Supp. at 1474-75. Nevertheless, because *Payne* directly contradicts the holdings of *Anderson* and *Reynolds*, both Kansas cases that have precedential effect, *Payne* carries little weight in this regard. See *Anderson*, 242 Kan. at 860; *Reynolds*, 24 Kan. App. 2d at 861-62. Furthermore, *Reynolds* held that headaches, diarrhea, nausea, crying, shaking, sexual problems, and feelings of stress, all caused by anxiety, were insufficient physical injuries. 24 Kan. App. 2d at 862. Moreover, the *Reynolds* court distinguished *Payne* and *Freeman*, noting that in those cases the plaintiffs alleged and offered

evidence of significant, severe symptoms of physical injury, which was not done in *Reynolds*. 24 Kan. App. 2d at 861-64.

See also *Schweitzer-Reschke v. Avnet, Inc.*, 874 F. Supp. 1187, 1196-97 (D. Kan. 1995) (holding one incident of vomiting and diarrhea plaintiff experienced on a date when alleged stress-inducing incident was not claimed to have occurred, and where symptoms could have been caused by other factors, is not a compensable physical injury); *Holdren v. General Motors Corp.*, 31 F. Supp. 2d 1279, 1285-86 (D. Kan. 1998) (holding that symptoms of difficult breathing, weakness, fatigue, headaches, gastrointestinal discomfort, sexual dysfunction, knee injury, respiratory infection, sleep disturbances, and " 'nerves' " requiring a prescription for Paxil were insufficient evidence of any compensable physical injuries).

When all is considered, Daniel has not suffered a compensable physical injury for purposes of a negligent infliction of emotion distress claim under Kansas law. Most of the symptoms alleged by Daniel have been ruled noncompensable in previous decisions. The only symptom that might qualify under existing case law was the vomiting. But see Restatement (Second) of Torts § 436A, comment c, p. 462 (1964) (recognizing that transitory, nonrecurring dizziness and vomiting do not make the actor liable where such symptoms are inconsequential and do not amount to any substantial bodily harm).

For argument purposes only, even assuming that Daniel could establish his vomiting as a physical injury, the vomiting occurred too remote in time from the initial incident, thus failing the requirements of *Hoard*, 233 Kan. at 279. Nevertheless, the dissent says that we have read *Hoard* too narrowly concerning the temporal proximity requirement and that the *Hoard* court did not draw a bright-line test for temporal proximity. *Ware*, 39 Kan. App. 2d at 413 (Greene, J., dissenting). We agree with the dissent that there is no bright-line test for temporal proximity. Further, in asserting that Daniel's vomiting occurred within a short time after the bus incident, the dissent states: "In *Hoard,* the plaintiffs sought recovery for emotional distress where physical manifestation occurred from 6 weeks to 2 years after the incident. *Ware*, 39 Kan. App. 2d at 414 (Greene, J., dissenting). Here, Daniel's physical manifestation occurred less than 6 months after the bus incident." Never-

theless, the *Hoard* court determined that the physical injuries suffered by the plaintiffs even 6 weeks after the incident was a substantial length of time: "The physical injuries suffered by the appellants occurred a substantial length of time, from six weeks to two years, after the incident." *Hoard*, 233 Kan. at 277. Although the dissent argues that Daniel's vomiting fits within the short span of time requirement, 5 months is a substantial length of time and is not within the span of time requirement established by *Hoard*, 233 Kan. at 279 ("Case law requires that the physical injuries must *directly* result from the emotional distress allegedly caused by the defendant's negligence, and must appear within a short span of time after the emotional disturbance.").

*Should Kansas Courts Expand the Physical Injury Definition to Include the Manifestations of PTSD?*

Daniel urges this court to expand the physical injury definition when the injury suffered as a result of negligence is PTSD, citing several cases outside this jurisdiction to support his proposition. Daniel reasons that the severity of this disorder and the resulting effects on a 4-year-old child, creating a lack for potential fakery that the physical injury requirement is meant to protect, warrant a departure from the general rule. We now turn to the cases relied upon by Daniel.

In *Rodriguez v. Cambridge Housing Authority*, 443 Mass. 697, 702-05, 823 N.E.2d 1249 (2005), a mother was brutalized in her home by an unknown intruder. Her young son found her bound, bleeding, and choking to death on her bed. He tried unsuccessfully to untie her. Both mother and son suffered PTSD following the incident. The Massachusetts Supreme Court recognized that more than 10 years earlier it had broadened its range of compensable symptoms for emotional distress claims to include a bystander claim like the one presented by the son. 443 Mass. at 701-03.

In *Rowell v. Holt*, 850 So. 2d 474, 477-79 (Fla. 2003), the court created an exception to the "impact rule," which states the emotional distress suffered by a plaintiff must flow from physical injuries sustained in an impact before he or she can recover emo-

tional damages for distress. There, the court allowed the claim when the plaintiff was wrongfully imprisoned due to the negligence of his attorney. The court focused on the special duty of the attorney, foreseeability of the injury, and severity of depriving a person's liberty. 850 So. 2d at 479-80. Nevertheless, the court noted that the exception was strictly limited to wrongful imprisonment cases and stated: "This determination should not . . . be interpreted to cast doubt on the continued viability of the impact rule, nor should this decision be extended any further than as narrowly tailored. We reaffirm the role the impact rule plays as a safeguard against unduly speculative claims." 850 So. 2d at 481. Similarly, in *La Fleur v. Mosher*, 109 Wis. 2d 112, 115, 118-19, 325 N.W.2d 314 (1982), the court affirmed the physical impact requirement but created a special exception for negligent confinement cases, reasoning that the nature of deprivation itself is a sufficient guarantee that the claim is not frivolous.

In *Collins v. Dunlap*, 1999 WL 185130, at *1-2 (Conn. Super. 1999) (unpublished opinion), the court permitted the plaintiff to recover on a negligent infliction of emotional distress claim when she alleged psychological injuries, nightmares, and psychiatric injuries after the defendant rearended the vehicle in which she was a passenger. The court only required that the plaintiff prove both that the defendant should have realized that his conduct involved an unreasonable risk of causing emotional distress and that, if emotional distress did result, the distress might result in illness or bodily harm. *Collins*, at *2. *Collins* did not address the nature of the alleged symptoms but only whether the plaintiff, absent a physical injury, was in the "zone of danger" to permit recovery. *Collins*, at *2-3.

None of the cases previously cited bear the weight of reliance which Daniel places upon them. ANW points out that *Rodriguez* and *Collins* involved bystander or zone of danger claims clearly recognized by their own states' laws. Further, the young plaintiff in *Rodriguez* was hospitalized for 17 days after the incident. In *Rowell* and *LaFleur*, each court made narrow, fact-driven exceptions to the physical injury requirement based on the extreme nature of the negligent conduct—wrongful incarceration. Though it

made an exception, the court in *LaFleur* took great pains to reiterate the public policy considerations supporting the physical injury requirement. 109 Wis. 2d at 115, 118-19.

Kansas has consistently held that generalized physical symptoms of emotional distress, such as those associated with PTSD and suffered by Daniel, are insufficient to state a cause of action for a negligent infliction of emotion distress claim. See *Anderson*, 242 Kan. at 860.

The physical injury requirement in Kansas is based on sound legal principle:

"The purpose . . . is to prevent plaintiffs from recovering for emotional distress that is feigned or counterfeit. [Citation omitted.] '. . . [E]motional distress is a common experience of life and is usually trivial. Therefore, the courts limit recovery to cases involving severe emotional distress which is evidenced and substantiated by actual physical injury.' [Citations omitted.]" *Reynolds*, 24 Kan. App. 2d at 861.

Clearly, the result that Daniel is advocating is at variance with current court precedents.

Like Kansas, a number of other jurisdictions seem to require either physical injury or physical manifestation to allow recovery under a negligent infliction of emotional distress claim: *Kallstrom v. United States*, 43 P.3d 162, 165-66 (Alaska 2002) (generally damages are not awarded for negligent infliction of emotional distress in the absence of physical injury, unless circumstances meet bystander exception or preexisting duty exception); *Keck v. Jackson*, 122 Ariz. 114, 115, 593 P.2d 668 (1979); *Garrison v. Medical Center of Delaware*, 581 A.2d 288, 293-94 (Del. 1990); *Lee v. State Farm*, 272 Ga. 583, 584-88, 533 S.E.2d 582 (2000) (recovery for negligent infliction of emotional distress is allowed only when there is some impact on plaintiff, and impact must be physical injury); *Evans v. Twin Falls County*, 118 Idaho 210, 218-20, 796 P.2d 87 (1990); *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 550-56, 457 N.E.2d 1 (1983) (adopting zone of danger rule but also requiring that plaintiff must show physical injury or illness as a result of emotional distress caused by defendant's negligence); *Barnhill v. Davis*, 300 N.W.2d 104, 105-08 (Iowa 1981) (recognizing that compensable mental distress should ordinarily be accom-

panied with physical manifestations of distress); *Vance v. Vance,* 286 Md. 490, 408 A.2d 728 (1979); *Payton v. Abbott Labs,* 386 Mass. 540, 544-57, 437 N.E.2d 171 (1982); *Daley v. LaCroix,* 384 Mich. 4, 8-16, 179 N.W.2d 390 (1970); *Engler v. Illinois Farmers Ins. Co.,* 706 N.W.2d 764, 767-72 (Minn. 2005) (applying zone of danger doctrine and also requiring that plaintiff suffer severe emotional distress with physical manifestations); *Wilson v. General Motors Acceptance Corp.,* 883 So. 2d 56, 64-65 (Miss. 2004) (plaintiff must prove physical manifestation of injury or demonstrable physical harm); *O'Donnell v. HCA Health Services,* 883 A.2d 319, 324-25 (N.H. 2005); *Muchow v. Lindblad,* 435 N.W.2d 918, 921-23 (N.D. 1989) (applying zone of danger test and also requiring plaintiff to establish bodily harm); *Kraszewski v. Baptist Medical,* 916 P.2d 241, 245-48 (Okla. 1996); *Melton v. Allen,* 282 Or. 731, 736, 580 P.2d 1019 (1978); *Houston v. Texaco, Inc.,* 371 Pa. Super. 399, 404-05, 538 A.2d 502 (Pa. Super. 1988) (The general law in Pennsylvania has been that, except in limited circumstances, a plaintiff may not recover for negligent infliction of emotional distress absent a physical manifestation of the emotional distress allegedly suffered.); *Perrotti v. Gonicberg,* 877 A.2d 631, 635-39 (R.I. 2005) (recognizing that Rhode Island follows zone of danger test and also requires that the plaintiff must suffer serious emotional injury that is accompanied by physical symptomatology); *Strickland v. Madden,* 448 S.E.2d 581, 583-84 (S.C. App. 1994) (plaintiff must prove that bodily injury was proximately caused by emotional trauma); *Maryott v. First Nat. Bank of Eden,* 624 N.W.2d 96, 102-04 (S.D. 2001) (negligent infliction of emotional distress requires manifestation of physical symptoms); *Hansen v. Mountain Fuel Supply Co.,* 858 P.2d 970, 973-75 (Utah 1993); *Brueckner v. Norwich University,* 730 A.2d 1086, 1092 (Vt. 1999) (if plaintiff has not suffered physical impact from negligent conduct, plaintiff must meet zone of danger test and also show that plaintiff in fact suffered substantial bodily injury or illness); *Hughes v. Moore,* 214 Va. 27, 29-35, 197 S.E.2d 214 (1973) (plaintiff must prove physical injury that was natural result of fright or shock proximately caused by defendant's negligence).

Moreover, some jurisdictions have combined the requirement of physical injury or physical manifestation with the common-law "physical impact" rule, which requires that the negligent conduct cause a physical impact in order for a plaintiff to prevail on a negligent infliction of emotional distress claim in nonbystander cases. See *Lee v. State Farm*, 272 Ga. at 584-88 (following physical impact rule and also requiring plaintiff to show that physical impact caused physical injury and that physical injury caused plaintiff's emotional distress); *Wilhoite v. Cobb*, 761 S.W.2d 625, 626 (Ky. App. 1988) (in a negligence case, there can be no recovery for fright, shock, or mental anguish that is not accompanied by physical contact or injury).

The rule that some type of physical injury or physical manifestation is required in order to recover for negligent infliction of emotional distress is consistent with that set forth in the Restatement (Second) of Torts § 436A, p. 461:

"If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance."

This rule appears to be followed by the majority of jurisdictions. *Gonzalez v. Metro. Dade Cty. Health Trust*, 651 So. 2d 673, 674-75 (Fla. 1995); see also *Muchow v. Lindblad*, 435 N.W.2d 918, 921-22 (N.D. 1989) ("A majority of jurisdictions follow the Restatement 2d Torts § 436A . . . requir[ing] bodily harm to recover for negligent infliction of emotional distress."). Comment b of § 436A of the Restatement sets forth three rationales for the rule that emotional disturbance alone is insufficient to recover for negligent infliction of emotional distress:

"The reasons for the distinction, as they usually have been stated by the courts, have been three. One is that emotional disturbance which is not so severe and serious as to have physical consequences is normally in the realm of the trivial, and so falls within the maxim that the law does not concern itself with trifles. It is likely to be so temporary, so evanescent, and so relatively harmless and unimportant, that the task of compensating for it would unduly burden the courts and the defendants. The second is that in the absence of the guarantee of genuineness provided by resulting bodily harm, such emotional disturbance may be too easily feigned, depending, as it must, very largely upon the subjective testimony of the

plaintiff; and that to allow recovery for it might open too wide a door for false claimants who have suffered no real harm at all. The third is that where the defendant has been merely negligent, without any element of intent to do harm, his fault is not so great that he should be required to make good a purely mental disturbance." Restatement (Second) of Torts § 436A, comment b, pp. 461-62.

Understandably, some jurisdictions, instead of backing away from the physical injury requirement altogether, have created exceptions to the rule. Indeed, some courts have recognized a limited exception in bystander cases. See *Sinn v. Burd*, 404 A.2d 672, 685 (Pa. 1979) (adopting foreseeability test in case where plaintiff saw her child being struck by automobile and killed). Further, a minority of jurisdictions have recognized an exception to the rule for emotional harm resulting from the negligent transmission of a death message by a telegraph company. See *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 274, 662 P.2d 1214 (1983). Nevertheless, a complete backing away of the physical manifestation rule appears to be problematic based on the rationale set forth in comment b of § 436A of the Restatement.

We find helpful California's experience with this issue. In *Molien v. Kaiser Foundation Hospitals*, 27 Cal. 3d 916, 921-31, 167 Cal. Rptr. 231, 616 P.2d 813 (1980), the California Supreme Court abolished the physical injury requirement, which created an independent cause of action for negligent infliction of emotional distress claims. Yet, a few years after that decision, the same court expressed concerns about the "limitless exposure to liability." *Thing v. La Chusa*, 48 Cal. 3d 644, 656, 257 Cal. Rptr. 865, 771 P.2d 814 (1989). Another California appellate court declared that *Molien* had created a "quagmire of novel claims." *Andalon v. Superior Court*, 162 Cal. App. 3d 600, 609, 208 Cal. Rptr. 899 (1984). By 1992, California abolished negligent infliction of emotional distress as an independent tort. Moreover, it had narrowed the scope of this claim to include only those cases in which a contractual relationship existed or those cases in which a bystander witnessed an injury to a loved one. See *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1071-74, 9 Cal. Rptr. 2d 615, 831 P.2d 1197 (1992); *Andalon*, 162 Cal. App. 3d at 609-12.

Nevertheless, the dissent argues for the abolishment of the physical manifestation requirement, stating that "Kansas need not retain criteria for compensability that are no longer consistent with the state of medical science." *Ware*, 39 Kan. App. 2d at 416 (Greene, J., dissenting). In support of its position, the dissent cites a number of cases that have abandoned the requirement. All the cases, except one, fail to offer the appealing authority that should be required before abolishing the physical manifestation requirement.

For example, the dissent cites *Molien*, 27 Cal. 3d 916, in support of its position. Nevertheless, as previously discussed, California has abandoned its experiment of allowing recovery on an independent tort of negligent infliction of emotional distress. Second, the dissent cites *Camper v. Minor*, 915 S.W.2d 437, 440-46 (Tenn. 1996). Nevertheless, Camper, who claimed to have suffered emotional injuries after seeing an accident victim's lifeless body, consulted a psychiatrist within 2 weeks after the accident—not approximately 9 months like we have in this case. Third, in *Doe Parents No. 1 v. State Dept. of Educ.*, 58 P.3d 545, 579-81 (Hawaii 2002), the court recognized an exception to the physical injury requirement. In doing so, the court stated: "[W]e have consistently held, as a general matter, that the plaintiff must establish some predicate injury either to property or to another person in order himself or herself to recover for negligently inflicted emotional distress." 58 P.3d at 580. Finally, in *Brueckner*, 730 A.2d at 1092, the court recognized the zone of danger exception: If plaintiff has not suffered an impact, plaintiff must show that he or she was within the zone of danger. This rule is inapplicable to this case.

In summary, we acknowledge that the physical manifestation requirement has been vigorously criticized by some courts as the dissent has noted. Moreover, as the dissent has pointed out, some courts have abandoned the requirement. Nevertheless, there are a number of states that still require some type of objective evidence of a plaintiff's emotional injury. Kansas happens to be one of those states that requires such evidence. It does not seem unreasonable to require some objective evidence of a plaintiff's emotional distress.

Because Daniel suffered no physical injury contemporaneous with or shortly after the bus incident, summary judgment on the negligent infliction of emotional distress claim was proper.

Affirmed.

GREENE, J., dissenting: I must respectfully depart from my colleagues in the majority because I am convinced that Daniel Ware, III, a minor, presents an authentic claim for emotional injury that should be cognizable based on existing Kansas law. Moreover, if existing law does not support this claim, I would advocate that existing law be clarified or modified to recognize such a claim.

Noting that the case was decided on summary judgment, the uncontroverted facts are deserving of examination. The following plaintiffs' statements of fact were not controverted:

"1. Daniel Ware was a very happy child before this [October 2002] incident.

"2. After the incident of being left on the bus, Daniel is very withdrawn, negative and sad. He wants to stay in the house and stay close to an adult.

"3. Jenni and Daniel Ware Jr. took Daniel back to preschool the day of the incident and Daniel became very upset and was crying saying he did not want to stay so Jenni and Daniel Ware Jr. took him home.

"4. Jenni Ware rode the bus with Daniel on one occasion when Neka Hall could not ride with him. Daniel cried to [sic] whole way there, held Jenni's hand and shook.

"5. Daniel vomited at school or at home every time Jenni or Daniel Ware Jr. took him to school after March 2003 until the end of May 2003.

"6. Jenni Ware took Daniel to see a Dr. Ready possibly in November 2002 to receive counseling. Jenni Ware also took Daniel to a Dr. Wright to receive counseling. Dr. Wright diagnosed Daniel with post traumatic stress disorder that was he believed brought on by being left on the bus.

"7. Daniel Ware was still treating [sic] for his condition at the time of his deposition.

"8. Daniel Ware suffered from behavior problems after this incident.

"9. Daniel Ware could not sleep by himself after the incident, he slept with his parents every night.

"10. Daniel was prescribed and took Zoloft and Lamictal to treat his emotional distress.

"11. Jeff Ready, LCP, the first professional to see Daniel, (which was three weeks after the date of the incident), testified that Daniel had a genuine reaction to what happened.

"12. Doug Wright, Ph.D., was the initial treating therapist. He testified that he diagnosed Daniel with Post-Traumatic Stress Disorder (PTSD) with a variety of

symptoms, including but not limited to nightmares, vomiting, anxiety, nervousness, physically shaking, acting-out, hyper-vigilance, sleep difficulties, bedwetting, a significant increase (35 lbs) in his weight, and a refusal to attend school.

"13. Doug Wright also testified that the problems Daniel was having had been continuous since the incident on the bus and in Dr. Wright's opinion was clearly linked to the bus incident.

"14. Dr. Wright further testified that PTSD cannot be diagnosed for at least one month after an incident and that the nature of PTSD is a physical re-enactment of feelings associated with the initial trauma.

"15. Dr. Hunter, Plaintiffs' expert, also diagnosed Daniel with PTSD and that there was nothing else to attribute the onset of Daniel's problems other than the bus incident.

"16. Dr. Hunter further testified that Daniel had hyperphasia, weight gain and vomiting, all physical reactions caused by Daniel being left on the bus in October 2002.

"17. Shawna Wright, Ph.D., L.P., became Daniel's treating therapist after Doug Wright. She testified that she agreed with Daniel's initial diagnosis of PTSD and that the PTSD was a result of the incident on the bus.

"18. Shawna Wright also testified that Daniel vomited while treating with her and that the vomiting reaction was due to the bus incident in 2002."

Additionally, the concessions of counsel for the defense are remarkable. In argument on the summary judgment motion, he stated:

"[I]n the light most favorable to plaintiff *this kid did sustain a real mental injury*. And on the basis of this factual record for summary judgment purposes I'm not arguing about that. The boy is in counseling. We are not debating that." (Emphasis added.)

First, I would hold that the physical manifestation of the emotional injury, vomiting that is triggered by a reenactment of feelings associated with the initial trauma, meets the criteria of *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 662 P.2d 1214 (1983), because it "directly resulted" from the original bus incident and it appeared within a sufficiently short span of time after the original bus incident, especially when it is considered that the triggering reenactment of feelings was deliberately delayed by steps intended to preclude any such reenactment. I respectfully believe the majority reads and applies *Hoard* far too narrowly; our Supreme Court did not draw a bright-line test for temporal proximity but, rather, set forth several guidelines for such an injury.

"As in all actions for the recovery of damages for negligence, the appellants must show that the physical injuries complained of were the direct and proximate result of the emotional distress caused by the . . . negligent conduct. [Citations omitted.] Furthermore, it is a fundamental principle of law that recovery may be had only where it is shown with reasonable certainty that damage was suffered and that such damage resulted from the act or omission of which complaint is made. [Citation omitted.] Recovery may not be had where the cause of the injury is too remote and speculative and where the alleged resulting damages are too conjectural and speculative to form a sound basis for measurement. [Citation omitted.] Other states have held that . . . [such] recovery may be had if, but only if, there is shown a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance and the physical injury. [Citations omitted.]" *Hoard*, 233 Kan. at 277.

In *Hoard*, the plaintiffs sought recovery for emotional distress where physical manifestation occurred from 6 weeks to 2 years after the incident. Here, Daniel's physical manifestation occurred less than 6 months after the bus incident.

Surely, we must recognize that the nature of Daniel's injury is unlike the typical emotional distress scenario. Here, Daniel did not suffer due to a horrific event that would never be repeated; Daniel suffered a horrific event in connection with an instrumentality that is a common element in the life of most students—a bus. The problem in this case that is absent from the usual case of emotional distress is that Daniel is expected to face the prospect of another horrific act every time he must do what nearly all students must do on a daily basis—ride a bus. His physical symptoms did not occur so long as he was provided some crutch to assure no repeat of the horrific event; but when he later realized he would be expected to resume bus riding without any chaperone or other crutch, the physical symptoms emerged immediately and continued persistently.

Here, I would argue there is no serious question that the physical manifestations of vomiting was the direct and proximate result of the emotional distress, that the damages suffered resulted from the initial incident, that the cause was neither remote nor speculative, and that Daniel's damages were neither conjectural nor speculative to form some claim for measurement. Moreover, I believe Daniel has shown that there was a clear and unbroken chain of causal

connection between the negligent act, the emotional disturbance, and the physical injury. Thus, I conclude a fair application of *Hoard* precludes summary judgment for ANW Special Education Cooperative No. 603 (ANW).

Second, if these facts and arguments do not move Daniel's claim within controlling precedent, perhaps it is time for our Supreme Court to reexamine the *Hoard* criteria. Where there is undisputed evidence of emotional injury that is caused by or directly related to the defendant's actions, where it is substantiated by medical opinion and being treated by drug therapy, counseling, or other similar medical treatment, where the physical manifestations are shown to be causally connected to the negligent acts, and where the finder of fact is convinced by a preponderance of evidence that there is no fakery of symptoms, perhaps the *Hoard* criteria should be modified.

Posttraumatic stress disorder (PTSD) is now a psychological trauma that may produce measurable brain damage or is otherwise capable of forensic assessment. Moreover, there is no longer any scientific reason to believe that medical science is somehow more competent to sort out the physical than the mental consequences of tortuous events. In fact, the research does not support a categorical distinction between emotional and physical harm on the ground that people who suffer mental or emotional loss are more likely to malinger or are more difficult to detect when they do. See Shuman, *How We Should Address Mental and Emotional Harm*, Judicature, Vol. 90, pp. 248-49 (May-June 2007). As stated by that commentator:

"Whatever the best minds of the day might have thought about the difference in physical and emotional harm when tort law came of age, the best minds of today do not support such a stark mind-body dichotomy.

"Our current understanding rejects this Cartesian dualism and leads us in the direction of an integrated model for understanding harm. Illustrating this understanding is a diagnosis common in civil and criminal courtrooms, Posttraumatic Stress Disorder. . . . Today and tomorrow's scientific paradigms do not support differential legal treatment of mental and physical harm." Shuman, *How We Should Address Mental and Emotional Harm*, Judicature, Vol. 90, p. 248.

Notably, some of the jurisdictions that previously required the physical manifestation element for compensability of emotional

harm have now abandoned the requirement. See, *e.g.*, *Molien v. Kaiser Foundation Hospitals*, 27 Cal. 3d 916, 921-31, 167 Cal. Rptr. 831, 616 P.2d 813 (1980); *Doe Parents No. 1 v. State Dept. of Educ.*, 58 P.3d 545, 579-81 (Hawaii 2002); *Johnson v. Ruark Obstetrics*, 395 S.E.2d 85, 92-97 (N.C. 1990); *Camper v. Minor*, 915 S.W.2d 437, 440-46 (Tenn. 1996); *Brueckner v. Norwich University*, 730 A.2d 1086, 1092 (Vt. 1999). As noted by the majority, however, wholesale abandonment of the physical manifestations element can be problematic. Accordingly, I would advocate clarifications of the requirements for compensable emotional distress that parallel the rationale of *Hoard* without the uncompromising bright-line test for temporal proximity imposed by the majority.

It is critical that the law keep pace with medical science. The frequency of PTSD, particularly in military veterans, will undoubtedly continue to advance the science of diagnosis as well as treatment of this emotional illness. The record on appeal in this case demonstrates that an authentic diagnosis of PTSD can be medically substantiated with reasonable reliability. Kansas need not retain criteria for compensability that are no longer consistent with the state of medical science.

For Daniel to be left without a remedy under all the undisputed facts in this case is antithetical to the general policy of tort liability in Anglo-American jurisprudence: those who are legitimately injured due to the act or omissions of others should have a remedy in our courts.

I would reverse the district court's grant of summary judgment in favor of ANW and remand for further proceedings.