Belknap
No. 92-271

PETER GRAY & a.

v.

FIRST NH BANKS, formerly FIRST CENTRAL BANK & a.

March 15, 1994

*Anderson Law Office*, of Pittsfield (*James R. Anderson* on the brief and orally), for the plaintiffs.

*Duffy and Laufer*, of Manchester (*Daniel A. Laufer* on the brief and orally), for defendant First NH Banks, formerly First Central Bank.

*Nelson, Kinder, Mosseau & Gordon, P.C.*, of Manchester (*Martha V. Gordon* on the brief and orally), for defendant La-Sal Properties of New Hampshire, Inc.

BATCHELDER, J. The plaintiffs appeal the decision of the Superior Court (*O'Neil*, J.) dismissing their suit for rescission of a real estate purchase. They argue that the trial court erred: (1) in finding that the defendants' violation of RSA 485-A:39 (1992) did not provide the basis for a cause of action; (2) in failing to rule that the lack of signatures on the site assessment study constituted *per se* liability; (3) in finding that the realtor was acting as an intermediary, rather than as the bank's agent; and (4) because its findings on each theory of recovery were clearly erroneous. We affirm.

In July 1990, the plaintiffs, Peter Gray, his wife, Sandra, and his parents, Henry and Shirley, learned of the availability of a bowling alley, Lakeview Lanes, on the shore of Little Squam Lake in Holderness. Defendant First NH Banks, formerly First Central Bank (the bank), had acquired title to the bowling alley by virtue of a deed in lieu of foreclosure against the previous owner. Peter Gray contacted the bank about the property. Shortly thereafter, Rod Donaldson, a real estate agent associated with defendant La-Sal Properties of New Hampshire, Inc. (La-Sal) who had worked with Gray in unsuccessful negotiations for another property, became involved in the negotiations for Lakeview Lanes on Gray's behalf. After viewing the property with Gwendolyn Davis, a bank representative, Peter Gray offered to buy it for $225,000. The bank made a counteroffer of $325,000, and the parties failed to reach agreement.

Following the initial offer, Peter Gray spoke with a co-worker, Philip Stone, who had worked for several summers at Lakeview Lanes. Stone told Gray that he "had heard that there were problems with the septic system," that the son of a former owner had been deterred from purchasing the property because "there were significant problems with the septic system," and that he should have the system checked. Gray responded that he intended to use the septic problems "as a negotiating tool with the bank to lower the purchase price." The system was never inspected.

On October 17, 1990, Peter Gray offered $275,000 for the property, requesting a warranty deed. The proposal to purchase contained the following paragraph: "4. Buyers and Sellers recognize that there is a present and potential problem with subject property's well and septic systems." The parties ultimately entered into a sales agreement on October 23, 1990, which provided that the property would be transferred by quitclaim deed and made no reference to the septic system. The Grays and the bank closed the sale and transferred title on November 16, 1990.

When the Grays began operating the bowling alley and restaurant, the septic problems surfaced. The system needed frequent pumping and emitted noxious odors. After learning that RSA 485-A:39 (1992) (current version at RSA 485-A:39 (Supp. 1993)) required the preparation of a site assessment study evaluating the sewage system of developed waterfront property before it could be offered for sale, Shirley Gray contacted Donaldson and requested a copy of the document. Although the Grays maintain that they had no knowledge of the site assessment until Shirley Gray received a copy from Donald-

son in January 1991, the bank contends that the Grays were given a copy of the document at the closing.

The Grays filed suit against the bank and La-Sal, contending that the bank's failure to procure a site assessment until the day before the closing violated RSA 485-A:39, entitling them to rescission of the contract, and that the negligent or fraudulent misrepresentations of the bank and La-Sal entitled them to money damages. The defendants' motion to dismiss at the close of the plaintiffs' case in the jury-waived trial was granted, and this appeal followed.

■ In the ordinary course of jury-waived trials, the judge, as trier of fact, makes factual findings to determine whether the plaintiffs have proved their case by a preponderance of the evidence. *Renovest Co. v. Hodges Development Corp.*, 135 N.H. 72, 78, 600 A.2d 448, 452 (1991). "On appeal, we will not overrule these findings of fact, unless they are clearly erroneous, nor will we reverse the dismissal based thereon unless it is inconsistent with the findings or otherwise contrary to law." *Id.*

The plaintiffs' first two arguments raise the consequences of a violation of the site assessment statute. RSA 485-A:39 requires the owner of developed waterfront property, prior to offering it for sale, to procure a site assessment study on the sewage disposal system. In this case, the site assessment study was dated the day before the closing and was not signed by the buyers as required. That the requirements of the site assessment statute were not met is not in dispute. Rather, it is the remedy for failure to strictly comply with the statutory mandate that is at stake. The plaintiffs contend that the failure to comply creates *per se* liability, entitling them to rescission of the purchase. We disagree.

Although a violation of RSA 485-A:39 occurred, evidence at trial refuted the plaintiffs' argument that the violation in any way caused their injuries. The trial court found that "[t]he plaintiffs were aware of significant problems with the septic system prior to the sale." In addition to Stone's testimony that he had warned Peter Gray of the problems with the septic system, the initial proposal to purchase contained an express acknowledgement that there was "a present and potential problem with subject property's well and septic systems." Further, Gray testified that this language was included because "the bank wanted to be sure that I wouldn't come back later on and say I've got no water and my leach field is not working."

■ The evidence that is most damaging to the plaintiffs is Peter Gray's admission that he intended to use the septic problems "as a

negotiating tool with the bank to lower the purchase price." The purpose of the site assessment study is "to determine if the site meets the current standards of sewage disposal systems established by the division [of water supply and pollution control, department of environmental services]." RSA 485-A:39, I; *see* RSA 485-A:2, III. Thus the statute serves to inform a prospective buyer of the condition of the sewage system, information not readily apparent from a site inspection of the property. Here, however, the plaintiffs knew of the problems yet chose to utilize them as a bargaining chip in negotiations for the purchase of the property. Accordingly, because the plaintiffs failed to prove that the statutory violation, rather than their chosen negotiation strategy, caused their injuries, the trial court's ruling was not contrary to the evidence or erroneous as a matter of law. *See Renovest*, 135 N.H. at 78, 600 A.2d at 452.

We recognize that the material required by the statute to be disclosed to the potential purchaser is broader than the information that the plaintiffs acknowledged they received. The trial court specifically found, however, that "[t]here was nothing new in the way of septic system information in the [site assessment] report." Because this factual finding was not clearly erroneous, *see Renovest*, 135 N.H. at 78, 600 A.2d at 452, we will not overrule it. We note that in future cases, the lack of strict compliance with the statutory mandate may give rise to the remedy sought by the plaintiffs here.

The plaintiffs next argue that the trial court's finding that Donaldson acted as an intermediary and not as the seller's agent was not supported by the evidence. Donaldson, Davis, and Peter Gray all testified that Donaldson was acting as no one's agent during the negotiations and was merely an intermediary in some hybrid capacity, facilitating the property's transfer. We find ample support in the evidence for the trial court's finding of Donaldson's unique status. *See id.*

The plaintiffs finally contend that the trial court's findings on each of its theories of recovery were so against the weight of the evidence as to constitute an abuse of discretion. With respect to the plaintiffs' count based on negligent or fraudulent misrepresentation, "[o]ne who fraudulently makes a misrepresentation . . . for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation." RESTATEMENT (SECOND) OF TORTS § 525 (1976). Similarly, "[o]ne who, in the course of his business . . . supplies false information for the

guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Id.* § 552. The plaintiffs failed to meet their burden on both theories.

 The trial court found that no misrepresentation occurred. Further, based on evidence that included Peter Gray's own testimony, the court found that the plaintiffs were aware of the problems with the sewer system early on in the negotiations, thus negating any argument that they relied on the bank's or realtor's statements. Finally, Peter Gray testified that he had no evidence that the value of the property is substantially less than that bargained for with the defendants. Because there was evidence on which the trial court could reasonably base its finding that no misrepresentation occurred, *see Quinlan v. City of Dover*, 136 N.H. 226, 229, 614 A.2d 1057, 1058 (1992), it did not err in dismissing this count. *See Renovest*, 135 N.H. at 78, 600 A.2d at 452.

 Finally, the plaintiffs maintain that the trial court erred in dismissing its count seeking restitution by rescission for mutual mistake. "Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party." RESTATEMENT (SECOND) OF CONTRACTS § 152(1) (1979). Because the trial court found that "[t]he plaintiffs were aware of significant problems with the septic system prior to the sale" and because there was ample evidence to support this finding, *see Quinlan v. City of Dover*, 136 N.H. at 229, 614 A.2d at 1058, no mistake occurred. Consequently, we find no abuse of discretion in the trial court's ruling. *Renovest*, 135 N.H. at 78, 600 A.2d at 452; *see also Derouin v. Granite State Realty, Inc.*, 123 N.H. 145, 147, 459 A.2d 231, 233 (1983).

*Affirmed.*

All concurred.