St. Marys Bank v. Creme                CV-96-292-M    03/12/98

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

St. Mary's Bank,
          Plaintiff,

     v.                                        Civil No. 96-292-M

Creme, Inc. individually and
as General Partner of Seventh
RMA Partners, L.P., and Seventh
RMA Partners, L.P. individually,
          Defendants,
     and

Seventh RMA Partners, L.P.,
          Counterclaim Plaintiff,

     v.

St. Mary's Bank, Donald Evans,
and Steven Wertz,
          Counterclaim Defendants.


                          **O R D E R**


     The parties' claims arise from the sale of a package of

problem loans.  Anticipating a suit by Creme, Inc. and Seventh

RMA ("RMA") Partners, L.P., who bought the loan package, St.

Mary's Bank, who sold it, brought a declaratory judgment action

seeking a determination of the parties' rights with respect to

certain provisions of their Loan Sale Agreement.  RMA filed

counterclaims against St. Mary's and two of its officers, Donald

Evans and Steven Wertz, alleging fraud, negligent

misrepresentation, and breach of contract.  St. Mary's moves to

dismiss RMA's counterclaims as barred by particular provisions of

the loan sale agreement.  RMA objects arguing that the cited

portions of the agreement do not bar its claims.  For the reasons

that follow, St. Mary's motion to dismiss is denied with respect to RMA's claims for fraud and is granted with respect to the claims for negligent misrepresentation and breach of contract.

## DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In considering a motion to dismiss, the court accepts all well-pleaded facts as true and resolves all reasonable inferences in favor of the nonmoving party. Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir. 1993). Documents that are attached to a complaint or are integral to the complaint, although not attached, may be considered as part of the pleadings in deciding a motion to dismiss. See Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993).

## A.  **Fraud Claim**

St. Mary's moves to dismiss RMA's fraud claim for failure to plead fraud with sufficient particularity as required by Federal Rule of Civil Procedure 9(b), and as precluded by release provisions in the Loan Sale Agreement.

2

## 1. **Rule 9(b) particularity.**

The heightened pleading requirements imposed by Rule 9(b)[1] are intended to provide a defendant with fair notice of the claim as well as to prevent improper use of allegations of fraud. Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997). To that end, Rule 9(b) requires that allegations of fraud "specify the time, place and content of an alleged false representation." Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991).

In support of its counterclaim for fraud, RMA has identified the allegedly fraudulent representations made with respect to each allegedly defective loan. RMA alleges that the misrepresentations were made by St. Mary's and two individual defendants, Donald Evans and Steven Wertz, who are alleged to have been bank officers at the time of the sale.[2] RMA alleges that Evans was the St. Mary's officer responsible for the RMA sale and for the contents of the "due diligence files" and for other representations and omissions by St. Mary's in connection with the sale. As RMA's allegations of fraud are sufficiently detailed and specific to meet the pleading requirements of Rule

---

[1] Rule 9(b) provides:

> (b) In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

[2] At the hearing held on January 21, 1998, counsel for RMA represented that it no longer intended to pursue claims against Steven Wertz. Therefore, those claims are considered withdrawn.

9(b), St. Mary's motion to dismiss for lack of particularity is denied.


2.    **Individual liability.**

Individuals may be liable for a corporation's liabilities and debts for fraud, <u>see, e.g.</u>, <u>Gautschi Auto Body Discount Center</u>, 139 N.H. 457, 461 (1995), and individual corporate officers may be liable for their own fraudulent activities, <u>see, e.g.</u>, <u>Cohen v. Koenig</u>, 25 F.3d 1168, 1173 (2d Cir. 1994).  St. Mary's has not shown that under New Hampshire law a cause of action against corporate officers for their own fraud cannot be maintained, as alleged by RMA.  In fact it can.


3.    **Effect of release and disclaimers in the Agreement.**

St. Mary's contends that the "Release of Seller" provision, section 6.1, in the Loan Sale Agreement bars RMA's fraud claim. Section 6.1 provides as follows:

> <u>Release of Seller.</u>  Buyer hereby releases and forever discharges Seller, its agents, servants, directors, officers, employees, successors, assigns and affiliates (all such persons being collectively referred to as the "Related Persons"), of and from any and all causes of action, claims, demands and remedies of whatsoever kind and nature that Buyer has or may in the future have against Seller or any Related Persons in any manner on account of, arising out of or related to the Loan Assets purchased hereunder; provided, however, that such release and discharge shall not apply to any remedy against Seller arising out of or related to any Defective Loan Asset.

RMA contends that the release and remedies limitations provisions, to the extent they would otherwise apply to its

4

claims, are unenforceable because the Agreement itself was induced by St. Mary's fraudulent representations in the bid package as to the value of the problem loans.

St. Mary's acknowledges that fraud in the inducement of an agreement would ordinarily allow the defrauded party to void the agreement under New Hampshire law. See, e.g., Manchester Mfg. Acquisitions v. Sears, Roebuck, 802 F. Supp. 595, 602-03 (D.N.H. 1992). Nevertheless, St. Mary's points to an exception, under Massachusetts law. A party is necessarily put on notice and may not reasonably rely on representations when it signs an agreement with provisions that are directly contradictory to representations made prior to the agreement. See Turner v. Johnson & Johnson, 809 F.2d 90, 95-97 (1st Cir. 1986) (construing Massachusetts law).

In Turner, J&J bought a thermometer business from plaintiff, Turner, for a lump sum and royalties. Plaintiff alleged that J&J misrepresented that it would actively market the thermometer, which allegedly induced plaintiff to agree to sell the business at a low price. Their written sale agreement, however, included a clause explicitly stating that J&J had no obligation to market the thermometer. The court held that a contract term is "flatly contradictory" to previous oral representations should give plaintiff pause: "[A] knowledgeable buyer should not sign a contract that conflicts with his or her understanding of the agreement." Id. at 97-98. In contrast, the court held, an ambiguous term, like an "as is" clause, leaves the agreement

5

undefined, to some extent, allowing plaintiff to reasonably interpret the language to be consistent with prior representations.  Id. at 96.

In this case, the release provision, taken in the context of the entire Agreement, which includes seller's representations in section 3.1.1, does not directly contradict RMA's alleged understanding that the bid package represented St. Mary's true, correct, and complete file on the loan properties.  Thus, the release and disclaimer in section 6.1 does not bar RMA's fraud claim.

## B.   Negligent Misrepresentation Claim

"'One who, in the course of his business . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'" Gray v. First NH Banks, 138 N.H. 279, 283 (1994)(quoting Restatement (Second) of Torts § 552). RMA asserts its negligent misrepresentation claim "in the alternative only to the extent the Defendants, or any of them, did not know of the misrepresentations and material omissions stated above [in the fraud claim]."  RMA's Answer at paragraph 107.  To the extent the individual defendant, Donald Evans, did not know of the alleged fraud, he is likely not liable for the alleged fraudulent activities.  See, e.g., Cohen, 25 F.3d at 1173

6

(corporate officers may be individually liable for fraud _if_ they have knowledge of or participate in it).  Since RMA argues only its fraud and breach of contract claims in objecting to St. Mary's motion to dismiss, it appears that RMA has abandoned its negligent misrepresentation claim as to both defendants.

St. Mary's contends that the release at section 6.1 of the Agreement bars both RMA's negligent misrepresentation and breach of contract claims.  The effect of the release is considered in the analysis of the breach of contract claim.  To the extent that RMA intends to maintain its negligent misrepresentation claim, the same analysis applies to both claims since only fraud by St. Mary's would allow RMA to avoid the consequences of the release language in the Agreement.

C.    **Breach of Contract Claim**

RMA alleges that St. Mary's breached section 3.1.3 of the Agreement and breached its implied covenant of good faith and fair dealing by providing an incomplete, incorrect and misleading bid package for the loans that RMA purchased through the Agreement.  Since in section 3.1.3 St. Mary's represented that the written materials in the bid package are true and correct in all material respects, RMA's negligent misrepresentation, breach of the duty of good faith and fair dealing, and breach of section 3.1.3 claims, all seem to be based on the same theory: St. Mary's had a duty (or contractual obligation) to provide a true and correct (and complete) bid package for the problem loans, and

7

breached that duty by providing misleading, incomplete, and false information. See, e.g., See Centronics Corp. v. Genicom Corp., 132 N.H. 133, 139 (1989) (implied good faith obligations in contract formation "are tantamount to the traditional duties of care to refrain from misrepresentation and to correct subsequently discovered error"). St. Mary's moves to dismiss the breach of contract claim on grounds that no misrepresentations were made that would breach section 3.1.3 and that the release language in the Agreement, section 6.1, bars the claim except for the exclusive and limited remedy provided in section 5.1.

Interpretation of the language of a written agreement presents a question of law. Bankeast v. Michalenoick, 138 N.H. 367, 369 (1994). The language used is to be given its reasonable meaning and is to be construed in the context of the agreement as a whole. Keshishian v. CMC Radiologists, 698 A.2d 1228, 1234 (N.H. 1997). Whether a contract term is ambiguous is also a question of law. Holden Engineering and Surveying v. Pembroke Realty Trust, 137 N.H. 393, 395 (1993). Contract language is ambiguous if the parties could reasonably disagree as to the meaning of particular language. Great Lakes Aircraft Co. v. City of Claremont, 135 N.H. 270, 288 (1992).

Section 3.1.3 provides: "All written materials provided in the Bid Package are true and correct in all material respects." The "Bid Package" "means the information provided by Seller to potential buyers relating to the purchase of the Loan Assets." Agreement at Article 1, Definitions. St. Mary's interpretation

8

of that language to mean that it only represented that it would provide true and correct <u>copies</u> of materials for the bid package is unreasonable. Instead, the representation clearly applies to factual truth and accuracy of the materials in all "material respects." The other contract provisions, such as the "as is" clause at section 2.10, the disclaimer found at section 3.2, and due diligence clause at section 4.3, do not preclude RMA's interpretation of section 3.1.3 as a warranty of the truth and accuracy of the information in the bid package or its alleged reliance on the representation. The language of section 3.1.3 does not preclude RMA's claim for breach.

St. Mary's also argues that the release in section 6.1 bars RMA's breach claims. By its terms, however, the release in section 6.1 does not apply to "any remedy" against St. Mary's "arising out of or related to any Defective Loan Asset." The Agreement provides in its definitions section that "Defective Loan Assets shall have the meaning indicated in Section 5.1 of this Agreement." In section 5.1, the Agreement describes the process for withdrawal or repurchase of defective loan assets. Defective loan assets are those for which "either party discovers the breach of any of the representations and warranties set forth in Section 3.1 as to a particular Loan Asset listed in the Schedule of Loan Assets." Section 5.1.1.

Section 5.1 provides a remedy for breach of the representations made in section 3.1. St. Mary's contends that section 5.1 is the exclusive remedy for breach of section 3.1.3

9

and bars RMA's claims here as untimely.  RMA interprets the section to limit its recourse to the remedy described, withdrawal or repurchase of loan assets, only for the sixty-day period and not to limit remedies for breaches discovered after the sixty-day period following closing.  It is undisputed that RMA did not assert the alleged breaches of St. Mary's section 3.1.3 representations within the time allowed, either before the closing or within sixty days afterwards.

Section 5.1.2, which provides the recourse process for defective loan assets discovered within sixty days of closing, also provides, "Buyer shall not be entitled to any other remedy due to a breach by Seller of any one or more of the representations and warranties described in Section 3.1." Section 3.2, disclaimer of warranties and representations, provides, "Except as otherwise provided in this agreement, all loan assets sold to Buyer under this agreement are sold and transferred without recourse, and without representations and warranties."  In addition, the "Limitation of Recourse" clause provides, "Buyer's sole recourse against Seller in the event of a breach of any of the representations and warranties set forth in Section 3.1 shall be to require Seller to repurchase the Defective Loan Asset to which the breach relates in accordance with the provisions of Section 5.1."  Thus, considering the Agreement as a whole, all recourse for a claim alleging misrepresentation of information in the bid package is consistently limited to the remedy provided in section 5.1.

10

RMA's version, that section 5.1 merely provides a limited remedy for a limited period (sixty days), and an unlimited remedy thereafter, and not that it provides the only remedy for breach of section 3.1, is unreasonable.

Accordingly, section 5.1 is not ambiguous, and it operates to bar RMA's claim for breach of section 3.1.3 warranties. Similarly, because RMA's negligent misrepresentation claim and claim for breach of the implied covenant of good faith and fair dealing allege misrepresentations in the bid package (which is warranted by section 3.1.3), to the extent either claim survives the release in section 6.1, it does so as a claim alleging defective loan assets that is limited by section 5.1. Therefore, RMA's breach of contract and negligent misrepresentation claims are barred by either the release or the limited remedy provisions of the Agreement and are hereby dismissed.

## Conclusion

For the foregoing reasons, St. Mary's motion to dismiss (document no. 30) is granted with respect to RMA's negligent misrepresentation and breach of contract claims, and is denied with respect to RMA's fraud claim.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

11

March 12, 1998

cc:   Kevin M. Fitzgerald, Esq.
      Scott F. Innes, Esq.
      Kevin J. Toner, Esq.