Hillsborough-northern judicial district
No. 2010-120

LORRAINE TESSIER

v.

REGINA S. ROCKEFELLER & a.

Argued: February 10, 2011
Opinion Issued: September 15, 2011

*Vincent A. Wenners, Jr.*, of Manchester, by brief and orally, for the plaintiff.

*Nixon Peabody, LLP*, of Manchester (*Gordon J. MacDonald* and *Brian D. Duffy* on the brief, and *Mr. MacDonald* orally), for the defendants.

CONBOY, J. The plaintiff, Lorraine Tessier, appeals an order of the Superior Court (*Abramson*, J.) granting the defendants' motion to dismiss. We affirm in part, reverse in part, and remand.

The plaintiff brought this action against the defendants, Regina S. Rockefeller and Nixon Peabody, LLP (Nixon Peabody), alleging the following facts. The plaintiff is the wife of Thomas Tessier, an attorney who practiced at the law firm of Christy & Tessier in Manchester. Dr. Frederick Jakobiec hired Attorney Tessier to handle certain estate matters on his behalf. On or about June 26, 2006, Attorney Rockefeller, an attorney employed by the firm of Nixon Peabody, acting on behalf of Dr. Jakobiec, accused Attorney Tessier of misusing and converting substantial assets of the Jakobiec family to his own use.

The plaintiff alleges that Attorney Rockefeller met with Attorney Tessier on numerous occasions and threatened him and, through him, the plaintiff, by demanding an immediate return of the misappropriated assets. Attorney Rockefeller stated to Attorney Tessier that if he repaid the money no further action would be taken against him. If payment was not forthcoming, however, Attorney Rockefeller would report his malfeasance to, among

others, the New Hampshire Supreme Court Attorney Discipline Office. She also threatened that criminal proceedings against Attorney Tessier would follow.

As a result of the threats, the plaintiff alleges that she was forced "under duress" to execute a reverse mortgage on, and the release of her homestead interest in, the family home in Manchester and a settlement agreement dated April 2, 2007. She alleges that over the next two years, the defendants "stripped" her and her husband of their individual and joint interests in all of their tangible assets, including a jointly held vacation property in Vermont. Despite the settlement agreement, and without notice to her or her husband, the defendants reported Attorney Tessier's actions to his law partner, the attorney discipline office, and others. In addition, Dr. Jakobiec hired an attorney to bring suit against Attorney Tessier and to foreclose on the mortgage that was the subject of the settlement agreement.

As a result of the defendants' actions, the plaintiff alleges that she suffered severe emotional and physical distress requiring hospitalization. She also alleges that she has been deprived of her husband's care and comfort because he has suffered emotionally and physically, causing him to seek psychological and medical treatment. The writ contains specific claims for abuse of process, tortious interference with advantageous contractual relationships, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, negligent infliction of emotional distress, respondeat superior liability, and negligent failure to train and supervise. In addition, as explained below, the factual allegations in the writ set forth a claim for fraudulent misrepresentation.

The defendants moved to dismiss the plaintiff's claims, arguing that she "has not and cannot set forth any legal duty she was owed by the defendants." They argued that Attorney Rockefeller "*never* met or otherwise communicated with the plaintiff," and, therefore, "it is simply impossible to construct a legal duty Attorney Rockefeller or Nixon Peabody owed to the plaintiff, much less a breach." Following a hearing, the plaintiff unsuccessfully sought to amend her writ. The court thereafter ruled that the writ failed to state a cause of action upon which relief may be granted and dismissed it. This appeal followed.

*I. Standard of Review*

In reviewing a motion to dismiss, our standard of review is whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery. *Gen. Insulation Co. v. Eckman Constr.*, 159 N.H. 601, 611 (2010). "The court must vigorously scrutinize the

complaint to determine whether, on its face, it asserts a cause of action." *Williams v. O'Brien*, 140 N.H. 595, 597 (1995) (emphasis and quotation omitted).

> We assume the [plaintiff's] pleadings to be true and construe all reasonable inferences in the light most favorable to [her]. We need not assume the truth of statements in the [plaintiff's] pleadings, however, that are merely conclusions of law. We then engage in a threshold inquiry that tests the facts in the petition against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss.

*Eckman Constr.*, 159 N.H. at 611 (citations omitted).

As a threshold matter, the defendants argue that we should strike the plaintiff's brief and dismiss her appeal for failure to comply with this court's rules. They argue that, among other deficiencies, the brief does not contain citations to the record, and that the plaintiff mischaracterizes what occurred in the trial court proceedings, asserts "facts" that confuse the roles of the parties, and alleges "facts" not pleaded or alleged in the plaintiff's writ or before the trial court. Regardless of the merits of the defendants' assertions, however, we decline to bar the plaintiff's appeal. Our task is to test the facts as alleged in the plaintiff's writ against the applicable law and we will limit our inquiry accordingly.

The plaintiff argues that the writ sets forth sufficient facts to support the alleged causes of action. With respect to the claims based on fraudulent misrepresentation, negligent infliction of emotional distress, and respondeat superior liability, we agree.

## II. Count I

The trial court read count I of the plaintiff's writ as "simply a recitation of the facts underlying the plaintiff's allegations" and concluded that it "does not set forth any cause of action." We disagree, and hold that count I states a cause of action for fraudulent misrepresentation.

The plaintiff argues that she "clearly set forth a claim" for duress or fraud. She also argues that her prayers for relief based upon duress and fraud are equally clear and pray for the remedies of rescission and compensatory damages. The plaintiff quotes from her writ where she prays that the court:

> . . . Find as a matter of fact and of law that [the] plaintiff's payments were made to the defendants involuntarily and as a

result of duress, abuse of process and in breach of contract and of the defendants'[ ] duties of good faith and fraudulently and that the defendants be compelled to return to the plaintiff those sums that they wrongfully extorted from her;

. . . Find as a matter of fact and of law that the settlement agreement, and other monies paid to the defendants, are rescinded on the grounds that the same were obtained under duress and that the moneys paid, property sold, and promissory notes and mortgage be declared void *ab initio* and [the] plaintiff restored to her status *quo ante* or, alternatively, that the defendants pay [the] plaintiff compensatory damages.

## A. Duress

In New Hampshire, a contract entered into under duress is voidable and thus duress is a defense to a breach of contract claim. *See, e.g., In re Estate of Hollett*, 150 N.H. 39, 42 (2003); *King Enterprises v. Manchester Water Works*, 122 N.H. 1011, 1013 (1982); *Davis v. Smith*, 68 N.H. 253, 254 (1894). The plaintiff's writ alleges that Attorney Rockefeller's promises not to report her husband's misconduct and her threats of criminal prosecution against him unless the plaintiff returned the money her husband stole induced the plaintiff under duress to enter into the settlement agreement with Dr. Jakobiec. However, even if we agree that the facts set forth in the writ establish duress, the plaintiff cannot sustain a cause of action seeking contract damages against these defendants.

Although the plaintiff claims in her writ that she paid money and property to the defendants pursuant to the settlement agreement, it is undisputed that the settlement agreement expressly provides that the assets were to go either to Dr. Jakobiec or to Attorney Rockefeller as trustee of a trust for his benefit. Because there is no allegation that the defendants received any of the assets transferred under the settlement agreement and because the defendants were not parties to the settlement agreement, there are no grounds for contract damages against them. Rather, any such claim would properly be against Dr. Jakobiec, who is not a named party to this lawsuit. Accordingly, we affirm the trial court's ruling that the plaintiff cannot sustain a cause of action seeking contract damages against the defendants arising out of the settlement agreement because there was no contract between the plaintiff and the defendants.

## B. Fraudulent Misrepresentation

" '[O]ne who fraudulently makes a misrepresentation . . . for the purpose of inducing another to act or to refrain from action in reliance upon

it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.' " *Gray v. First NH Banks*, 138 N.H. 279, 283 (1994) (quoting RESTATEMENT (SECOND) OF TORTS § 525, at 55 (1977)). "The tort of intentional misrepresentation, or fraud, must be proved by showing that the representation was made with knowledge of its falsity or with conscious indifference to its truth and with the intention of causing another person to rely on the representation." *Patch v. Arsenault*, 139 N.H. 313, 319 (1995). "In order to withstand a motion to dismiss, the plaintiff must specify the *essential details* of the fraud, and *specifically allege* the facts of the defendant's fraudulent actions." *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 46-47 (1987) (brackets and quotation omitted).

In count I of the writ, the plaintiff alleges that the defendants, through Attorney Rockefeller, represented to Attorney Tessier and, through him, to the plaintiff, that if the misappropriated assets were repaid no further action would be taken against him, but that if payment was not forthcoming she would inform the attorney discipline office and criminal proceedings would follow. "A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention." RESTATEMENT (SECOND) OF TORTS § 530, at 64. "Since a promise necessarily carries with it the implied assertion of an intention to perform it follows that a promise made without such an intention is fraudulent and actionable in deceit under the rule stated in § 525. This is true whether or not the promise is enforceable as a contract." *Id.* cmt. c.

The New Hampshire Rules of Professional Conduct require that "[a] lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty . . . *shall* inform the appropriate professional authority." N.H. R. PROF. CONDUCT 8.3(a) (emphasis added). Lawyers are deemed to know the Rules of Professional Conduct. *Whelan's Case*, 136 N.H. 559, 563 (1992). As the writ alleges, "when it appeared that the property of the plaintiff and Attorney Tessier [was] depleted, the defendants . . . then reported Attorney Tessier's alleged malfeasance to the New Hampshire Supreme Court Attorney Discipline Office, causing him to be suspended from the practice of law and to be the subject of criminal prosecution." These allegations would support a finding that at the time Attorney Rockefeller allegedly promised not to report Attorney Tessier's misconduct, the defendants knew they had the obligation to do so and, thus, had no intention of keeping the promise.

■ The fact that the alleged misrepresentation was not made directly to the plaintiff does not defeat her cause of action.

> The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction . . . involved.

RESTATEMENT (SECOND) OF TORTS § 533, at 72-73. This rule "is applicable not only when the effect of the misrepresentation is to induce the other to enter into a transaction with the maker, but also when he is induced to enter into a transaction with a third person." *Id.* cmt. c.

The writ alleges that in reliance upon the defendants' promises not to report her husband's misconduct, the plaintiff agreed to execute a reverse mortgage on, and release her homestead interest in, the family home in Manchester and the settlement agreement dated April 2, 2007. In her prayer for relief, the plaintiff states that her payments were made to the defendants involuntarily and as a result of fraud. We read the facts set forth in the writ as alleging that the defendants either intended or had reason to expect that the promises made to Attorney Tessier would be communicated to the plaintiff and would influence her decision to enter into the settlement agreement with Dr. Jakobiec.

■ "The recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss resulting from it if . . . he relies on the misrepresentation in acting . . . and . . . his reliance is justifiable." RESTATEMENT (SECOND) OF TORTS § 537, at 80. Reliance upon a fraudulent misrepresentation is not justifiable unless the matter misrepresented is material in that

> (a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or

> (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

*Id.* § 538, at 80.

■ Whether a reasonable person would have regarded the fact misrepresented to be important in determining her course of action is a question

for the jury, unless the court determines that "the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable [person] would have been influenced by it." *Id.* cmt. e. The plaintiff alleges in her writ that "when faced with the choice of sacrificing her interest in certain of the joint assets of her family which she had accumulated over forty-six (46) years of marriage, or watching professional and criminal action taken against her husband and the exposure of her family to public shame, ridicule and disgrace," she agreed to comply with the defendants' demands against her share of the family assets. We cannot say, as a matter of law, that the alleged fact that the defendants misrepresented that they would not report Attorney Tessier's misconduct if the plaintiff entered into the settlement agreement was so "obviously unimportant" to her course of action as to render her reliance unreasonable. *See id.*

■ "A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance." RESTATEMENT (SECOND) OF TORTS § 548A, at 106. The writ alleges that as a result of the defendants' actions, the plaintiff has been "strip[ped] . . . on an asset by asset basis of substantially all of her possessions." Based upon allegations in the writ that the defendants, through Attorney Rockefeller, promised not to report Attorney Tessier's misconduct in order to induce the plaintiff to enter into the settlement agreement, we conclude that it could reasonably be expected that the plaintiff would rely upon such misrepresentation and thereby suffer pecuniary loss.

■ Because the plaintiff's writ specifies the essential details of the alleged fraud and specifically alleges the defendants' actions, we hold that the plaintiff has stated a claim against the defendants for fraudulent misrepresentation sufficient to withstand a motion to dismiss. *See Baker*, 130 N.H. at 46-47. Accordingly, we remand count I to the trial court for further proceedings consistent with this opinion.

## III. Abuse of Process

The writ alleges in count II that the defendants "made improper use of the civil process of the New Hampshire Supreme Court Attorney Discipline Office and the criminal process of the New Hampshire Attorney General." According to allegations in the writ, the defendants misused such processes by threatening disciplinary and criminal action and promising not to take such action if the plaintiff paid money she did not owe. The writ alleges that the plaintiff was damaged thereby in that she was "forced to transfer substantially all of her assets to the defendants."

The plaintiff argues that it is unethical for an attorney to use or threaten to use criminal processes as a means to obtain an advantage in civil litigation. She argues that the defendants violated Rule 8.3 of the New Hampshire Rules of Professional Conduct by delaying the reporting of Attorney Tessier's theft for nearly one and one-half years and that it "would be inapposite for this Court to conclude that such unethical conduct did not constitute an abuse of process." The defendants respond that the trial court properly dismissed this claim because: (1) the plaintiff does not allege that any process was instituted by the defendants against her, rather than against her husband; and (2) reporting professional misconduct does not constitute the initiation of a judicial process. Because there is no allegation that they misused the authority or process of any court after an action was initiated, the defendants argue that no abuse of process occurred.

"A party claiming abuse of process must prove the following elements: (1) a person used (2) legal process, whether criminal or civil, (3) against the party (4) primarily to accomplish a purpose for which it is not designed and (5) caused harm to the party (6) by the abuse of process." *Long v. Long*, 136 N.H. 25, 29 (1992). In order for a party to commit an abuse of process, some court authority or jurisdiction must be used. *See id.* at 30 (process is some activity or procedure involving the exercise of, or depending upon the existence of, judicial authority). An action for abuse of process is concerned with the improper use of process after it has been issued. *See id.* "The gravamen of the misconduct for which [liability for abuse of process] is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings. . . . The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed." *Id.* at 29-30 (quotation omitted).

Set against these legal principles, the facts alleged in the plaintiff's writ do not, as a matter of law, constitute a basis for relief in that the plaintiff does not allege that any legal process was used against her. To the extent that the plaintiff alleges that the criminal and disciplinary actions against her husband were instituted to force her to enter into and execute the settlement agreement, the trial court correctly concluded, "At the time the criminal and disciplinary proceedings commenced, the plaintiff had already performed because she had entered into the settlement agreement and the property transfers were complete. Therefore, the actions could not have been instituted to force her performance." We also agree with the trial court that any alleged threat made by Attorney Rockefeller does not constitute an abuse of process because it "in nowise emanates from or rests

upon the authority or jurisdiction of a court," an essential element of abuse of process. *Amabello v. Colonial Motors*, 117 N.H. 556, 559 (1977) (quotation omitted). We affirm the trial court's dismissal of count II.

### IV. Tortious Interference With Advantageous Contractual Relationships

Count III of the writ appears to allege that the defendants acted in bad faith by reporting Attorney Tessier's misconduct, which they had promised not to do, despite the fact that the plaintiff performed all of her covenants under the settlement agreement. The trial court characterized count III as alleging:

> The settlement agreement does not memorialize all of the terms of the agreement, including the names of all of the parties to the agreement. The defendants are parties to the settlement agreement and entered into the agreement with no intention of honoring the agreement. The defendants then interfered with the plaintiff's settlement agreement with Dr. Jakobiec in an effort to release the defendants from their obligations under the settlement agreement.

The trial court concluded that the writ alleges that the defendants breached their obligations under the settlement agreement, not that they interfered with the settlement agreement between Dr. Jakobiec and the plaintiff. Because the plaintiff failed to allege that the defendants intentionally and improperly interfered with the contractual relationship between her and Dr. Jakobiec, the trial court ruled that the plaintiff failed to state a basis for relief.

The plaintiff argues that the trial court's construction of count III as relating only to the settlement agreement was error. The plaintiff argues that she "clearly pleads . . . that the defendants wrongfully induced a breach of the agreement" in that

> [t]he defendant[s] entered into two contracts — one oral and the "Settlement Agreement" — in both their own and in Dr. Ja[k]obiec's name. They knew (or should have known) that the contracts were unenforceable against them. They also knew (or should have known) that the contracts might have been enforceable against Dr. Ja[k]obiec. They caused Dr. Ja[k]obiec to breach the contracts, however, in order to further their own self-interests. They could not continue to "hide" a million-dollar theft . . . from the Attorney Discipline Office or the criminal authorities so they made it appear that the plaintiff breached the agreement (i.e., by

failing to collect the $100,474.30 due from the guarantor, Michael Tessier) and then reported Mr. Tessier, in Dr. Ja[k]obiec's name, and presumably advised Dr. Ja[k]obiec to keep the money paid to him by the plaintiff. The defendants recorded the second mortgage (and later attempted to foreclose on it), despite the contractual agreement prohibiting recordation if plaintiff was not in default. Defendants, despite their agreement with plaintiff, did in fact report Mr. Tessier to the civil and criminal authorities despite the fact that plaintiff was not in default of the agreement. The defendants had no intention of honoring their part of the agreement, and thereby to allow Dr. Jakobiec to fulfill his contractual obligations. The defendants acted in bad faith either to convince Dr. Jakobiec that the plaintiff had breached her contractual obligations or acted, in his name, and on their own, in order to avoid their ethical dilemma because of the agreement by reporting Mr. Tessier to the civil and criminal authorities and causing their client to retain the plaintiff's property.

The defendants argue that the plaintiff has failed to allege that the contractual obligations contained in the settlement agreement were not performed. As to an alleged oral agreement between the defendants and the plaintiff, they argue that even if such a contract existed, one cannot interfere with a contract to which one is a party. Therefore, the defendants argue, the plaintiff has not identified any facts in the record to support a claim that they interfered with any contract to which she was a party.

■■■ "To establish liability for intentional interference with contractual relations, a plaintiff must show: (1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant *intentionally* and *improperly* interfered with this relationship; and (4) the plaintiff was damaged by such interference." *Hughes v. N.H. Div. of Aeronautics*, 152 N.H. 30, 40-41 (2005) (citation omitted); *see Roberts v. Gen. Motors Corp.*, 138 N.H. 532, 539 (1994) (claim requires allegations that defendant wrongfully induced a breach of contract between plaintiff and a third party). "One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise *causing the third person not to perform the contract*, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." RESTATEMENT (SECOND) OF TORTS § 766 (emphasis added). Thus, where contractual obligations were performed, there can be no claim for tortious interference with contractual relations. *See Alternative Systems Concepts, Inc. v. Synopsys*, 229 F. Supp. 2d 70, 73 (D.N.H. 2002).

■ Despite the expansive argument set forth in the plaintiff's brief, our task is to test the facts set forth in the writ against the applicable law. Reading the writ in the light most favorable to the plaintiff, we conclude that there is *no* allegation that Dr. Jakobiec failed to perform his contractual obligations under the April 2, 2007 settlement agreement. As a matter of law, therefore, the writ fails to set forth facts to support a claim for tortious interference with a contractual relationship.

■ Further, even assuming the defendants were parties to the settlement agreement and interfered with the agreement by reporting Attorney Tessier to the authorities, tortious interference with a contractual relationship requires interference by one who is not a party to the contract. We affirm the trial court's dismissal of count III for failing to state a basis for granting relief.

## V. Breach of the Duty of Good Faith and Fair Dealing

Count IV of the writ alleges that the actions of the defendants were taken in violation of the duty of good faith and fair dealing implied in all contracts executed or performed in New Hampshire. The plaintiff argues that she entered into both an oral and a written contract with the defendants based upon Attorney Rockefeller's promise not to report Attorney Tessier's theft or to institute criminal proceedings, and that the defendants misrepresented their intent to perform the contracts as they "had no intention of complying with the agreements and in fact did not do so." The plaintiff argues that she "has alleged oral and written contracts with the defendants" and that the "establishment" of the contracts must be by evidence presented at trial, not on the pleadings. The defendants argue that the plaintiff has failed to allege facts sufficient to establish an oral contract with the defendants because she conceded that there was no communication between them. They further argue that they were not parties to the settlement agreement.

> Regarding the alleged oral contract, the trial court found that the plaintiff has not alleged that she was in privity of contract with Attorney Rockefeller or Nixon Peabody. The plaintiff does not allege that she ever met with Attorney Rockefeller. The plaintiff does not even allege that she ever spoke directly with Attorney Rockefeller . . . . Because the alleged contract was oral and the plaintiff never met with Attorney Rockefeller, the plaintiff could not be a party to and could not agree to the terms of the oral contract.

■ "A valid, enforceable contract requires offer, acceptance, consideration, and a meeting of the minds." *Durgin v. Pillsbury Lake Water Dist.*, 153 N.H. 818, 821 (2006) (citations omitted). A meeting of the minds requires that the agreement be manifest and based upon an objective standard. *Id.* The plaintiff does not allege that she had any direct dealings with the defendants. An oral contract cannot be formed unless there has been a meeting of the minds between the parties, which could not have occurred where the parties had no relationship with, or contact with, one another. *See Hammond v. The Bank of New York Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307, at *11 (S.D.N.Y. June 25, 2010). We affirm the trial court's ruling that the plaintiff has not pleaded facts that support the existence of an oral contract with the defendants.

Based upon the plain language of the April 2, 2007 settlement agreement, the trial court found that "there is no ambiguity regarding the parties to the settlement agreement. The contract lists only Thomas Tessier, Lorraine Tessier, and Frederick Jakobiec as the parties, and only these persons evidenced an intent to be bound by the terms of the settlement agreement by signing the agreement." We agree that the plaintiff has not alleged facts that would support a finding that the defendants were parties to the settlement agreement and, therefore, we affirm the trial court's dismissal of count IV.

The plaintiff further argues that she moved to amend the writ to correct perceived deficiencies and that the trial court erred as a matter of law in denying her motion. The plaintiff sought to amend her writ to add counts IX and X. The proposed count IX alleges that

> the parties entered into a contract, partially verbal (through communications between the Defendants, the Plaintiff's husband, Attorney Thomas Tessier, Mr. Tessier's lawyer, and others) and partially in writing, the terms of which were that the Plaintiff would transfer all her assets to the Defendants in repayment of money allegedly stolen by her husband and in consideration thereof, that the Defendants promised they would not report the Plaintiff's husband to the New Hampshire Supreme Court's Attorney Discipline Office, law enforcement authorities and others; that the Plaintiff performed her promises; that the Defendants did not perform their promises, did report the Plaintiff's husband's conduct and, accordingly, breached the contract, causing the Plaintiff the loss of her assets and consequential damages.

The proposed count X alleges that

> the Defendants placed the Plaintiff under such duress that she was forced to enter into the contract alleged in COUNT IX by

making threats over a period of one and one-half years; that the threats were made to the Plaintiff's husband, to his lawyer, and to others; that the Defendants intended that the threats reach the Plaintiff and force her into entering into the contract; that the Defendants knew that the threats did in fact cause her to enter into the contract; that the threats were that her husband's conduct would be reported, as above alleged, to the New Hampshire Supreme Court's Attorney Discipline Office and criminal prosecutors, if she did not enter into the contract; that the duress that her husband would be disbarred and criminally prosecuted unless she entered into the contract was legally sufficient to render the contract void and the Defendants obligated to return the Plaintiff's assets to her.

The proposed counts thus assert claims against the defendants sounding in contract and duress as a defense to a breach of contract claim.

 Pursuant to RSA 514:9 (2007), a trial court may permit a substantive amendment to pleadings "in any stage of the proceedings, upon such terms as the court shall deem just and reasonable, when it shall appear to the court that it is necessary for the prevention of injustice. . . ." Accordingly, liberal amendment of pleadings is permitted unless the changes would surprise the opposing party, introduce an entirely new cause of action, or call for substantially different evidence. *Bel Air Assocs. v. N.H. Dep't of Health & Human Servs.*, 154 N.H. 228, 236 (2006). An amendment may also be denied if it "would not cure the defect in the writ." *Gould v. George Brox, Inc.*, 137 N.H. 85, 90 (1993). Whether to allow a party to amend his or her pleadings rests in the sound discretion of the trial court. *Coan v. N.H. Dep't of Env't Servs.*, 161 N.H. 1, 11 (2010). We will not disturb the trial court's decision absent an unsustainable exercise of discretion. *Id.*

 The trial court's order states that "[a]s previously determined, where the plaintiff does not allege that she personally met with Attorney Rockefeller, she cannot sustain a cause of action arising out of an oral contract. Additionally, as previously determined, where the defendants were not listed as parties to the written settlement agreement, the plaintiff cannot sustain a cause of action against the defendants arising out of that written contract." Thus the trial court concluded that the proposed count IX fails because, as a matter of law, there is no contract between the plaintiff and the defendants. Because there is no written or oral contract between the plaintiff and the defendants, the trial court concluded that the

proposed count X likewise fails. We agree and cannot conclude that the trial court's denial of the motion to amend was an unsustainable exercise of discretion.

## VI. Intentional Infliction of Emotional Distress

Count V of the writ alleges that the defendants' threats, promises, and actions were for "the sole purpose of extracting all of [the] plaintiff's property from her even though she had done nothing wrong and owed nothing to the defendants," that the defendants "acted deceitfully under the guise of keeping their promises," that the defendants "knew that their actions would cause [the] plaintiff severe emotional distress but intentionally and/or recklessly proceeded nonetheless," and that the defendants did intentionally and/or recklessly cause her "severe and unbearable emotional distress and extreme mental suffering."

On appeal, the plaintiff argues that the defendants "intentionally caused emotional distress to the plaintiff by subjecting her to constant and continuous threats for a period of more than one and one-half years, depriving her of her property, and causing her hospitalization." The defendants argue that the plaintiff has failed to state a claim because any alleged threats were made to Attorney Tessier or his attorney and not directly to her.

In order to make out a claim for intentional infliction of emotional distress, a plaintiff must allege that a defendant "by extreme and outrageous conduct, intentionally or recklessly cause[d] severe emotional distress to another." *Morancy v. Morancy*, 134 N.H. 493, 496 (1991) (quotation omitted). "In determining whether conduct is extreme and outrageous, it is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice." *Mikell v. Sch. Admin. Unit #33*, 158 N.H. 723, 729 (2009) (citation and quotations omitted). Rather, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

The only conduct the plaintiff alleges in her writ involved threats made to her husband. Liability for intentional infliction of emotional distress "clearly does not extend to mere . . . threats." RESTATEMENT (SECOND) OF TORTS § 46 cmt. d. Thus, the plaintiff has failed, as a matter of law, to allege facts sufficient to establish the requisite extreme and outrageous conduct toward her. In the absence of such allegations, we affirm the trial court's dismissal of count V.

*VII. Negligent Infliction of Emotional Distress*

Count VI of the writ alleges that the defendants knew or should have known that their actions would cause the plaintiff to suffer severe emotional distress and that the defendants' actions caused her to suffer severe emotional distress, manifested by physical symptoms requiring medical care, medication and hospitalization. The plaintiff argues that she "has alleged ample facts, including the defendants' scheme to coerce plaintiff into doing an action that she could not be legally bound to do" and that she has also "alleged severe emotional distress with accompanying physical symptoms resulting in her hospitalization." The defendants argue that the plaintiff's failure to allege an underlying tort is fatal to her claim for negligent infliction of emotional distress.

■■ ■■ The elements of a claim for negligent infliction of emotional distress include: "(1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms." *O'Donnell v. HCA Health Servs. of N.H.*, 152 N.H. 608, 611 (2005) (citation omitted). The allegations set forth in the plaintiff's writ satisfy each of these elements. The alleged conduct of the defendants that supports a claim for fraudulent misrepresentation also supports a claim for negligent infliction of emotional distress. It could reasonably be found that it was foreseeable that by making fraudulent misrepresentations to Attorney Tessier and through him, to the plaintiff, with the intention of causing the plaintiff to relinquish her property, the plaintiff would suffer emotional harm as a result. *See id.* at 612. In addition, the plaintiff has alleged that as a result of the defendants' actions, she "suffered a deterioration of her physical and mental well being, requiring her to seek medical care and hospitalization for potentially life threatening conditions." *See Orono Karate v. F. Vallari Studio of Self Defense*, 776 F. Supp. 47, 50-51 (D.N.H. 1991). Taken as true, we conclude that the plaintiff has alleged facts sufficient to support a claim for negligent infliction of emotional distress. Accordingly, we reverse the trial court's ruling and remand count VI to the trial court for further proceedings consistent with this opinion.

*VIII. Respondeat Superior Liability*

■■ Count VII of the writ alleges vicarious liability on the part of Nixon Peabody for actions undertaken by Attorney Rockefeller and other employees in the performance of their duties. Under the doctrine of respondeat superior, "an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope of his or her employment when his or her tortious act injured the plaintiff." *Pierson v. Hubbard*, 147 N.H. 760, 766 (2002). Conduct falls within the scope of employment if: "(1) it is of the kind [the employee] is employed to

perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the employer." *Porter v. City of Manchester*, 151 N.H. 30, 40 (2004).

The trial court ruled that because the plaintiff had not alleged that Attorney Rockefeller committed any tortious acts, there was no theory of liability on which Nixon Peabody could be held vicariously liable. Because we conclude that the plaintiff has stated claims in tort for fraudulent misrepresentation and negligent infliction of emotional distress, we reverse the trial court's ruling and remand count VII for further proceedings consistent with this opinion.

*IX. Negligent Failure to Train and Supervise*

Count VIII of the writ alleges negligence on the part of Nixon Peabody in failing to properly train and supervise Attorney Rockefeller and other employees, resulting in the plaintiff's loss of property and severe emotional distress. The defendants assert that the plaintiff failed to allege any facts to indicate that Nixon Peabody knew or should have known that Attorney Rockefeller presented a risk to the plaintiff. Without any facts to support an underlying duty of care or knowledge of a risk, the defendants argue that the trial court properly dismissed these claims.

> The basis for a claim of negligent employment or supervision brought against an employer where the employee harms a third party is not the vicarious liability of the doctrine of *respondeat superior*, but a separate theory of employer liability. Thus, claims for negligent hiring, training and supervision encompass direct liability as a result of the misconduct of the employee.

*Exeter Hosp. v. N.H. Ins. Guaranty Assoc.*, 158 N.H. 400, 405 (2009) (citations omitted). "Liability exists only if all the requirements of an action of tort for negligence exist." RESTATEMENT (SECOND) OF AGENCY § 213 cmt. a (1958). Other than stating conclusions of law, the plaintiff has failed to allege any facts in the writ that would support a cause of action for Nixon Peabody's negligent failure to train and supervise. *See Hungerford v. Jones*, 988 F. Supp. 22, 23-24 (D.N.H. 1997) (complaint must contain factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory). Absent such facts, we affirm the trial court's dismissal of this claim.

*Affirmed in part; reversed in part; and remanded.*

DALIANIS, C.J., and DUGGAN, HICKS and LYNN, JJ., concurred.